475 S.E.2d 344

Penny A. KYLE, Plaintiff
Below, Appellant,

v.

Edward D. KYLE, Defendant
Below, Appellee.

No. 23061.

Supreme Court of Appeals of
West Virginia.

Submitted May 1, 1996.

Decided July 5, 1996.

**254**

F. Alfred Sines, Jr., Victoria L. Casey, Charleston, for Appellant.

William W. Talbott, Webster Springs, for Appellee.

ALBRIGHT, Justice:

This is an appeal by Penny A. Kyle from an order of the Circuit Court of Webster County making equitable distribution of the parties' property and denying her an alimony award and certain attorney fees and costs in a divorce proceeding. In making its rulings, the appellant claims the circuit court refused to adopt the recommended order of the family law master without finding that the family law master's recommendations were clearly erroneous. The appellant also claims that the circuit court erred in substituting its findings for those of the family law master. After reviewing the issues presented and the record filed, this Court agrees with certain of the appellant's assertions and disagrees with other points. The judgment of the Circuit Court of Webster County is, therefore, affirmed in part, and reversed, in part.

The parties to this proceeding were divorced by an order of the Circuit Court of Webster County dated June 3, 1992, and the appellant was granted custody of the parties' two infant children, who are now aged ten and twelve.

While the Court does not have before it a transcript of the proceedings below, the findings of the family law master in the case show that the parties, during marriage, purchased three parcels of real estate upon which improvements were located. The first was a 6.24 acre tract located at Shady Springs, West Virginia. The second was an apartment building located at 221 North Heber Street in Beckley, Raleigh County, West Virginia. The third was a one-half interest in a camp in Webster County, West Virginia. Additionally, the parties were purchasing a 76.56 acre tract located in Webster County under a "land contract", and they also had acquired or were acquiring various items of personal property, on some of which money was still owed. The evidence also shows that money was owed on a number of the items of property.

Lengthy proceedings were conducted before a family law master. Before those proceedings were concluded, the matter was bifurcated, and on May 28, 1992, the family law master recommended, and by order made June 3, 1992, the parties were divorced on

the ground that "the parties have lived separate and apart for one year". The existing temporary orders regarding child custody and alimony were continued in effect and all matters related to those subjects and "all phases of the finances" of the parties were reserved for later hearing. At the conclusion of the proceedings before the family law master, he made findings of fact, conclusions of law, and a recommended order, by his report dated September 22, 1992. The report of the family law master disposed of matters at issue and made the following recommendations with respect to the matters in dispute in this appeal:

(1) As to certain personal property specifically enumerated in the report, including a 23 foot camper located in Shady Springs, a Ford tractor located in Webster County, a Dynamart riding mower, a Honda ATV located in Webster County, all furnishings located on the 76.56 acre tract in Webster County, a hauling trailer located in Shady Springs, a chest freezer located in Shady Springs, an upright freezer located in Webster County, a satellite dish located on the 76.56 acre tract in Webster County, all personal property located in all outbuildings, sheds, and/or cellar houses on the 76.56 acre tract in Webster County and on the 6.24 acre tract in Shady Springs, and weapons (.25 pistol, M–1 carbine, .308 rifle, 22–250 rifle, and three other guns), the parties were to select an auctioneer and cause the property to be sold at auction, dividing the proceeds equally.

(2) Based on an agreement of the parties announced to the family law master at a hearing, which the law master found to be fair and equitable, the appellant was awarded exclusive use and possession of the 6.24 acre tract (sometimes referred to in the record as a 6.22 acre tract) in Shady Springs, West Virginia, together with the 1979 Oakwood mobile home located upon it, until the parties' youngest child reached the age of eighteen, incident to child support. When the parties' youngest child reached the age of eighteen, the parcel with the mobile home on it and furnishings contained within it were to be sold at public sale, with the proceeds derived therefrom to be divided equally between them. Notwithstanding the descrip-

tion of this award as "incident to child support", the family law master recommended two provisions regarding the 6.24 acre tract which appear to relate to equitable distribution and alimony. First, because the appellant had allowed her parents to occupy a part of the 6.24 acre tract and place a trailer on that part, the appellee claimed a credit or offset against the appellant for such usage. The parties agreed at the hearing before the master, and the master recommended, that the rental value of the lot occupied by the appellant's parents was $80.00 per month, and the law master allowed the appellee a credit of $40.00 per month against child support otherwise payable by the appellee. Second, the master recommended, as explained in more detail below, that the appellant's own use of the 6.24 acre tract tract be recognized separately from the children's occupancy of the premises.

(3) Based on the announced agreement, the 76.56 acre tract in Webster County, which it appears constituted the former marital domicile, the apartment on North Heber Street, and the one-half interest in the camp in Webster County were to be sold at public sale and the net proceeds be divided equally between the parties.

(4) The family law master found that, "considering the financial needs of the parties and [appellee's] ability to pay", the appellant should be awarded alimony until the children attain the age or eighteen or the appellant sooner remarries or dies; however, as noted in paragraph 2, above, the master recited that the appellee's obligation to pay alimony was to be offset by the appellant's free use of the appellee's interest in the 6.24 acres until the children of the parties reached the age of eighteen.

(5) As to attorney fees and costs, the family law master stated:

8. Both parties unnecessarily increased the length of the many hearings before the undersigned Master, which contributed to their increased attorneys' fees. The Plaintiff wasted the Court's time on the fault issue she failed to establish as a grounds for divorce and the Defendant wasted the Court's time on the issue of child custody. Therefore, each party should pay their own

attorneys' fees. In addition, various public sales recommended hereby should generate funds for each party to pay their respective attorney's fees.

9. Considering their respective abilities to pay, the Defendant should pay 75 percent (or $532.50) and the Plaintiff 25 percent (or $177.50) of the Family Law Master hearing fees incurred herein.

Upon submission of the family law master's proposed order to the circuit court, the appellee filed a petition in the circuit court on or about October 5, 1992, seeking review of the family law master's report. The petition challenged the family law master's recommendation that the 76.56 acre tract be sold, the award of alimony, the amount of child support, the amount of the offset awarded the appellee for the occupancy of a part of the 6.24 acre tract by the appellant's parents, and the award of custody of the children to the appellant. It appears that the court below conducted a hearing on this petition for review on January 8, 1993, but the order reflecting the judgment of the court on the appellee's petition is dated and was entered February 17, 1995. In the interim between the stated date of the hearing on the petition for review and the entry of an order concluding the review, the parties apparently litigated several additional matters.

The parties apparently filed motions, which we do not find in the record, which were heard by the circuit court May 5, 1993, and ruled on by order dated and entered July 27, 1993. With respect to matters at issue in this appeal, the court below found that "the plaintiff [appellant here] should pay the reasonable monthly rental for her parents' occupancy on the jointly-owned property upon which the plaintiff resides" and that "the issue of an offset against child support for the reasonable rental value of the home occupied by the *plaintiff and her new husband* was taken under advisement by the court." (Emphasis added.) The court ordered the appellant to pay to the appellee the sum of $40.00 per month as rental for her parents' occupancy of a part of the 6.24 acre tract and held "in abeyance a ruling on all other matters until the Court has had an opportunity to review the petitions for review

and the proposed recommended decisions submitted by the Family Law Master" and counsel for each of the parties. The record does not contain the petition of the appellee for review of the family law master's report nor any recommended decisions other than that of the family law master.

On January 31, 1994, the appellee filed a petition in contempt against the appellant, which was heard by the circuit court on May 3, 1994. With respect to the issues now before this Court, the order reflecting that hearing, entered July 29, 1994, contains several pertinent recitals. With respect to the Heber Street property, the order directs that control of the property be delivered to the appellee and that the parties agreed that if the property was not sold within sixty days, it would be placed with a broker. The court also ordered that each party pay their own attorney fees and costs. With respect to alimony, the order states:

> ... [T]he plaintiff [appellant here] is ORDERED to account to or give the defendant credit for all alimony payments made to her subsequent to January, 1992, when the plaintiff announced on the record that she was waiving alimony. The Court finds that, the plaintiff having married, she is no longer entitled to alimony, and has not been entitled to alimony since her waiver of alimony on the record as set forth below.

The order of the court below disposing of the appellee's petition for review of the report of the law master reflects, as noted above, that the matter was heard January 8, 1993, and the resulting order entered February 17, 1995. The order does not reflect that additional evidence was taken, nor does it explain in any way the long delay between the hearing on the petition and the entry of an order deciding the issues. Moreover, the order does not, by its terms, acknowledge the two intervening hearings and orders described above, dealing with issues raised in this appeal. As to the five issues raised in this appeal and outlined above, the order provides as follows:

(1) As to the personal property specifically enumerated in the report, for which the family law master recommended that the parties

select an auctioneer and cause the property to be sold at auction, it appears that, without stating any reason for so doing, the court below has rejected that recommendation by providing in the order that "all household goods, furniture and furnishings" presently in the possession of each party be and become the sole and separate property of that party. The order contains no other provision specifically dealing with the enumerated items of personal property, although it does provide that certain guns be declared the sole and separate property of the appellee.

(2) As to the 6.24 acre tract in Shady Springs, it does not appear that the circuit court disturbed the agreement of the parties to sell the property when the children attain the age of eighteen. The court did deal with the matter of offsets due the appellee: (a) As to a credit because a part of the property was occupied by the appellant's parents, the court confirmed the $40.00 per month credit against child support provided for by the family law master; (b) as to the total offset allowed the appellee against any alimony due the appellant by reason of her occupancy of the 6.24 acres with the children, the court stated:

> The plaintiff, however, waiving alimony, and this Court finding her non-entitlement, is of the opinion the defendant [appellee here] is entitled to off-sets in child support. . . .

Then the court determined that one half of the fair rental value of the premises was $110.00 per month and allowed that sum as a credit against child support, in addition to the $40.00 per month for her parent's occupancy of the premises, for a total credit of $150.00 per month. The court said:

> The evidence reveals that the plaintiff's parents live in a trailer located on the 6.22 acres. The reasonable lot rental, therefore, is $80.00 per month, for which the defendant is entitled to a $40.00 credit against child support.
>
> The Court finds that the 6.22 acres in Shady Springs having a value of $25,000.00 to $30,000.00, and being unencumbered, that the defendant would be entitled to an off-set of one-half (1/2) of the reasonable rental value of said property, which the

Court finds to be $110.00. The defendant is therefore entitled to a total of $150.00 off-set against the child support as set forth in the Law Master's Recommended Order.

(3) As to the 76.56 acres located in Webster County, the circuit court made extensive findings, which also involved the trailer on the 6.24 acre tract at Shady Springs. The court stated:

> [I]t is undisputed that the parties hereto were purchasing under a written Contract, the 76.56 acres located in Webster County; that the purchase price was $20,000.00, of which the parties paid $5,000.00 down.
>
> The $5,000.00 used for the down payment was money borrowed from the defendant's brother, Richard Kyle. It is further undisputed that the best evidence of the value of the 76.56 acres was that certain Appraisal dated October 27, 1991, introduced into the evidence in this case, which appraised said real estate at a value of $23,650.00. The Court finds that the appreciated value of the real estate is $3,650.00, or that the parties acquired an equity therein of $3,650.00.
>
> The Court further finds from the records and evidence in this case that the parties purchased a 1988 Redman Flamingo House Trailer [which apparently is located on the 76.56 acre tract], at a purchase price of $12,202.00; that the parties paid a down payment thereon of $2,502.00; and that the sum of $9,700.00 was financed for a period of ten (10) years, at an interest rate of 14.75%, requiring monthly payments of $155.01. The Court, however, finds that based upon the Appraisal aforesaid, dated October 27, 1991, the value of said trailer was $10,800.00.
>
> The Court further finds that the parties hereto separated in April of 1991, and that, based upon the payment schedule for the trailer, the parties would have been obligated to have made eight (8) payments, which would have reduced the principle [sic] by approximately $286.00, leaving a balance due upon the principal [sic] of the trailer note of $9,414.00.

Taking into consideration the value of the trailer, as set forth in the appraisal, to-wit: $10,800.00, the Court finds that as of the date of separation, the parties had an equitable interest in said trailer of $1,386.00.

The Court further finds, based upon the Contract of July 9, 1990, wherein the parties agreed to purchase the 76.56 acres located in Webster County, and based upon the separation date of the parties, to-wit: April, 1991, and taking into consideration the parties borrowed the down payment, the Court finds that the parties reduced the principle [sic] owed upon said property by approximately $20.00 per month, over a period of nine (9) months, or a total reduction in the principle [sic] of $180.00.

Taking into consideration the appraised value of said property, to-wit: $23,650.00, the Court finds that the parties have an equity in said real property in the amount of $3,830.00, for a total of $5,216.00 as of the date of separation.

The equity shall be accounted for as hereinafter set forth.

The Court therefore finds that the Law Master's order that the 76.56 acre tract be sold is unwarranted by the facts, unsupported by substantial evidence, and an abuse of discretion, more particularly, on the basis that it is upon the 76.56 acres that the defendant resides.

The Court is further of the opinion that the Court is without jurisdiction to order a public sale of real estate, the title to which is not in the parties.

At a later point in the order, the court stated:

The Court, however, finding that the parties' equity in the 76.56 acres [including the 1988 Redman Trailer] is $5,216.00, one half of which is $2,608.00, which sum the plaintiff shall be entitled to receive from the defendant's one-half interest in the property located at 221 North Heber Street . . . when the property at 221 Heber Street is sold.

(4) With respect to alimony, the court concluded that the appellant was not entitled to alimony because she could not prove grounds therefor and because she had then elected to remain separated from the appellee for a period of over twelve months, the ground upon which she obtained the divorce. The court stated that, given such circumstances, the appellant was not entitled to alimony based upon W.Va.Code § 48–2–15(i) and the holdings in *Dyer v. Tsapis*, 162 W.Va. 289, 249 S.E.2d 509 (1978), and *Peremba v. Peremba*, 172 W.Va. 293, 304 S.E.2d 880 (1983), both of which predate the changes in our alimony law effected when equitable distribution was first codified in 1984.

(5) On the matter of attorney fees and court costs, the court below did not disturb the findings of the family law master.

Also, the court below did not disturb the rulings of the family law master on the remaining exceptions taken by the appellee regarding child custody or the amount of child support, except, as noted, to rule on the amount of offset to be allowed the appellee because of the appellant's occupancy of the Shady Springs property.

In the present proceeding, the appellant essentially argues that the circuit judge ignored the recommended findings of fact and conclusions of law of the family law master and, in violation of the rule set forth by this Court in *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995), substituted his own judgment for that of the family law master without demonstrating that the findings of fact and conclusions of law of the family law master were clearly wrong.

In syllabus point 1 of *Stephen L.H. v. Sherry L.H., Id.*, the Court stated:

A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard.

In syllabus point 3 of the same case, the Court further explained reversal under the clearly erroneous standard. The Court stated:

Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are sup-

ported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences.

Basically, the appellant here is challenging the fact that the circuit court failed to follow the family law master's recommendations with regard to the enumerated items of personal property, that the court below gave an offset against child support for the appellant's occupancy of the 6.24 acre tract, while the appellee occupies the 76.56 acre tract rent free, that the 76.56 acre tract was awarded to the appellee and an inadequate value fixed for the appellant's interest in the property in lieu of sale, notwithstanding the agreement of the parties on the record to sell the property, that the appellee has refused reasonable offers to sell the Heber Street property, from which the appellant is to receive her determined equity in the 76.56 acre tract, and the Heber Street property continues to deteriorate, and that the appellant should have alimony and an award for attorney fees and costs.

We must now proceed to resolve the issues raised by the parties. We note in so doing that considerable time has passed since the family law master's findings in 1992 and that, apparently, there has been a substantial change in the circumstances of the parties. Moreover, the entire matter is greatly muddled by the intervening orders of the circuit court and the entry in 1995 of the order reflecting the results of a hearing in 1993 on the exceptions to the family law master's report. We are left with the impression that an order has yet to be entered expressing the recommendations of the family law master which were approved by the circuit court and that, in any event, the current circumstances of the parties are not accounted for by the record before us. We perceive that

the appellant has remarried and that the appellee, contrary to his expectations when the family law master ruled, now desires to continue to own and occupy the 76.56 acre tract and use the personalty found on it. All of this is complicated by the fact that the parties are entitled to equitable distribution of their property as of the date of separation, in 1991. It is time that justice be done and done promptly. Finally, we note the provisions of applicable law [1] when exceptions to a law master's report are filed, requiring timely action by the circuit court and, if there be remand to the master, by the family law master.

■ (1) As to the enumerated personalty that was to be sold under the agreement of the parties and the recommendation of the law master, we find no reasons stated in the order of the circuit court why the recommendation of the law master has been rejected. As noted, we have surmised a reason, but the order below does not confirm that and, in any event, makes no equitable adjustment of values for the property to be retained by each party. With regard to the lack of an adequately articulated basis for altering the recommendations of a family law master, we have stated:

> W.Va.Code, 48A-4-10(c) (1990), limits a circuit judge's ability to overturn a family law master's findings and conclusions unless they fall within one of the six enumerated statutory criteria contained in this section. Moreover, Rule 52(a) of the West Virginia Rules of Civil Procedure requires a circuit court which changes a family law master's recommendation to make known its factual findings and conclusions of law.

Syllabus point 1, *Higginbotham v. Higginbotham*, 189 W.Va. 519, 432 S.E.2d 789 (1993).[2]

---

1. West Virginia Code §§ 48A-4-20 (e) and (f) state:

 (e) The order of the circuit court entered pursuant to the provisions of subsection (d) of this section shall be entered not later than ten days after the time for filing pleadings or briefs has expired or after the filing of a notice or notices waiving the right to file such pleading or brief.

 (f) If a case is recommitted by the circuit court, the master shall retry the matter within twenty days.

2. The requirements to which this syllabus point refers are now contained in W.Va.Code § 48A-4-20(c) and (d), which provide:

 (c) The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master, and

(2) With respect to the award of an offset against child support for the rental value of the part of the 6.24 acre tract occupied by the appellant's parents, and the further offset of an allowance for the appellant's occupancy of the premises, we perceive that there is no dispute regarding the rental value of the 6.24 acre tract, that is, that the family law master fairly found that the total rental value of the premises can be considered to be $300.00 per month and that $80.00 of that amount may be fairly allocated to the portion of the premises occupied by the appellant's parents. However, we believe that there is merit to the appellant's claim that it is unfair to permit the appellee to occupy the 76.56 acre tract without rent while that tract has not been sold as the parties agreed and while the appellant's equity in that property has not been paid to her, especially at the same time that the appellant is being charged rent for her occupancy of the 6.24 acre tract— albeit with a new husband. It has long been the law of this State that one co-tenant occupying land to the exclusion of another co-tenant is liable to the excluded co-tenant for the reasonable rental value of the excluded co-tenant's interest in the real estate. *See Hatcher v. Narcise*, 180 W.Va. 20, 375 S.E.2d 198 (1988). In divorce and child custody litigation, that principle and the value to one party of that party's occupancy or use of property jointly owned by both parties has usually been disregarded in light of the express authority granted to courts to award the exclusive right of use and occupancy of the marital home or other property to one of the parties, often as an incident of child support.[3]

may enter the recommended order, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require. The circuit court shall not follow the recommendation, findings and conclusions of a master found to be:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformance with the law;

(2) Contrary to constitutional right, power, privilege or immunity;

(3) In excess of statutory jurisdiction, authority or limitations or short of statutory right;

(4) Without observance of procedure required by law;

(5) Unsupported by substantial evidence; or

(6) Unwarranted by the facts.

(d) In making its determinations under this section, the circuit court shall review the whole record or those parts of it cited by a party. If the circuit court finds that a master's recommended order is deficient as to matters which might be affected by evidence not considered or inadequately developed in the master's recommended order, the court may recommit the recommended order to the master, with instructions indicating the court's opinion, or the circuit court may proceed to take such evidence without recommitting the matter.

**3.** West Virginia Code § 48–2–15(b)(5), one provision of the statute authorizing this, provides:

The court may grant the exclusive use and occupancy of the marital home to one of the parties, together with all or a portion of the household goods, furniture and furnishings reasonably necessary for such use and occupancy. Such use and occupancy shall be for a definite period, ending at a specific time set forth in the order, subject to modification upon the petition of either party. Except in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations when such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties. The court may require payments to third parties in the form of home loan installments, land contract payments, rent, property taxes and insurance coverage if the amount of such coverage is reduced to a fixed monetary amount set forth in the court's order. When such third party payments are ordered, the court shall specify whether such payments or portions of payments are alimony, child support, a partial distribution of marital property or an allocation of marital debt: Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments made pursuant to this subdivision shall be deemed to be alimony. When such third party payments are ordered, the court shall specify whether such payments or portions of payments are alimony, child, support, a partial distribution of marital property or an allocation of marital debt. If the payments are designated in an order and the parties have waived any right to receive alimony, the court may designate the payments upon motion by any party. Nothing contained in this subdivision shall abrogate an existing contract between either of the parties and a third party or affect the rights and liabilities of either party or a third party under the terms of such contract.

■ In this case, it does not appear that the 6.24 acre tract was the former marital domicile, and we cannot say that it is an abuse of discretion for a family law master or court to find and award a rental value to the excluded co-tenant. However, we also note that the subject premises are being used to provide a home for the infant children of the parties, as well as to provide a home for the appellant and her new husband. Upon the remand of this case for the consideration of the other matters requiring reversal, it will be appropriate for the family law master or the court to reconsider the appellee's occupancy of the 76.56 acre tract without rent being paid to the appellant as an excluded co-tenant and also to review carefully the provisions for child support to be certain that the out-of-pocket costs to the appellant of providing for the parties' children in her custody are equitably shared by the parties. In that review it would not be an abuse of discretion for the trial court to consider that the custodial parent, the appellant here, is now required to pay rent for her occupancy, with her new husband, of the home in which the children of the parties reside. To the extent appropriate, the court should not overlook the appellant's payments to the appellee of rent for the custodial home in the consideration of child support.

(3) The 76.56 acre tract presents other troublesome problems. As is recited above, the parties agreed before the family law master, and the master recommended, that the parties' property "land contract" interest in the 76.56 acre tract located in Webster County be sold and that the net proceeds be equally divided, since the property was marital property. The circuit court deviated from that recommendation. While recognizing that the family law master properly found that the property was marital property, the court made findings with regard to the net value of the parties' interest in the 76.56 acre tract and directed that the property be awarded to the appellee. The court further directed that the appellee pay or be obligated to the appellant for one-half of the net value of the parties' interest, such one-half of the value to come out of the appellee's portion of the proceeds from the sale of the North Heber Street property.

■ We confront first the court's finding that it was without jurisdiction to order the public sale of the property, since the property was being purchased under a land contract which had not yet been fully satisfied and since title to the property was not in the parties. We appreciate that the appellee relies on the statutory provision providing that the court's powers in dealing with alimony, child support, and marital property distribution shall not "abrogate an existing contract between either of the parties and a third party or affect the rights and liabilities of either party and a third party."[4] That provision must be read with W.Va.Code § 48–2–32(d)(7)(E),[5] which expressly authorizes the court to order a sale of specific property and an appropriate division of the net proceeds of such sale, and W.Va.Code § 36–1–9,[6] which clearly authorizes the sale of interests acquired under land contracts. We agree that such a sale would necessarily have to be in accord with the particular terms of the land contract or be at a price sufficient to discharge the unpaid purchase price, just as the order of a sale of land subject to a deed of trust would necessarily have to respect the terms of the deed of trust or be at a price sufficient to discharge that debt and lien. However, the mere existence of a purchase money debt and encumbrance on the title to real estate does not defeat the jurisdiction of a circuit court to order the sale of such real estate in a divorce action.

---

**4.** *See* W.Va.Code § 48–2–15(b)(5), set forth in note 3, *supra*.

**5.** West Virginia Code § 48–2–32(d)(7)(E) provides that, after considering the factors set forth in W.Va.Code § 48–2–32(c), the trial court may, among other things:

Order a sale of specific property and an appropriate division of the net proceeds of such sale: Provided, That such sale may be by private sale, or through an agent, or by judicial sale, whichever would facilitate a sale within a reasonable time at a fair price.

**6.** West Virginia Code § 36–1–9 provides, in relevant part: "Any interest in or claim to real estate or personal property may be lawfully conveyed or devised."

While this Court believes, as indicated, that the court below had jurisdiction to order the sale of the 76.56 acre tract, we do not conclude that the court's decision to permit the appellee to retain possession and pay the appellant one half of the net value accumulated under the land contract is necessarily wrong. Specifically, we recognize that it might be difficult, if not impossible, to locate a purchaser at public sale willing to pay anything approaching the real value of the real estate or the net value, if the parties' vendor were willing to substitute vendees. If the vendor would not accept substitute vendees, a proper order of sale would either have to provide for how a deficiency is to be satisfied from other assets of the parties or prohibit sale for less than the debt encumbering title to the property. Moreover, while either of the parties might theoretically have come forward at such a sale to bid and protect his or her interests, it is not clear that the parties had such liquid capital as might have been necessary to protect the parties' investment in the subject real estate.

We note that the circuit court did find that the down payment for the property had been provided or loaned by the appellee's brother, Richard Kyle. The court also noted that the appellee resided upon this property and concluded that the law master's recommendation that the property be sold was unsupported by substantial evidence and constituted an abuse of discretion. Although it is not altogether clear in the present case how the appellee's brother contributed to the purchase of the 76.56 acre tract, there is some indication that he did and that by so doing he indicated a desire that the appellee acquire an interest in the property. Finally, we note that W.Va.Code § 48–2–32(e) provides that, in a divorce action, a court may order the transfer of legal title to the former marital domicile and household goods to one of the parties without regard to the preference for effecting equitable distribution by lump sum or periodic payments.[7] From all of these circumstances, we believe that the circuit court could fairly conclude that the family law master's recommendation of requiring public sale of the parties' interest in the subject 76.56 acres, without more, was an abuse of discretion which ought be set aside.

Unfortunately, that does not entirely dispose of the issues raised by the circuit court's rejection of the law master's recommendation with respect to the subject tract. The difficulties remaining are: (1) The court did not deal with the agreement of the parties to sell the property, despite the finding below that the agreement of the parties with respect to sale of the real estate was fair and equitable; (2) even if the court can be said to have properly found that the agreement of the parties or the order of the family law master was unworkable because of the questionable value of the land contract, the status of the property as the former marital domicile, or the impracticality of *public* sale, the court neither took new evidence nor remanded the issues for further consideration by the law master; (3) the court made new findings of fact regarding value which had not been made below, without taking new evidence; (4) the order nowhere explains why the family law master's order was incorrect, except for the circuit court's legally erroneous conclusion that there is no jurisdiction to order the sale of real estate subject to a land contract.

Because of these difficulties, we believe it is now necessary to remand the issue of the 76.56 acre tract for further consideration by the circuit court or the family law master. It will be necessary to ascertain if additional evidence is required to render a just decision, to find and determine why the agreement of the parties for the sale of the property should not be carried out, to consider, if it be determined that sale is not required by reason of that agreement, whether public or private sale or transfer of the property to the

---

7. West Virginia Code § 48–2–32(e) provides:
 In order to achieve the equitable distribution of marital property, the court shall, unless the parties otherwise agree, order, when necessary, the transfer of legal title to any property of the parties, giving preference to effecting equitable distribution through periodic or lump sum payments; Provided, That the court may order the transfer of legal title to motor vehicles, household goods and the former marital domicile without regard to such preference where the court determines it to be necessary or convenient. . . .

appellee best promotes the interests of both parties, to determine whether the appellee is liable to the appellant for the reasonable rental value of her interest in the property, pending payment to her of her equity in the premises, and if so how much. It may be necessary to re-evaluate the evidence to determine if the valuations previously determined by the court are supported by substantial evidence already in the record or if new evidence must be taken. The circuit court may properly proceed to make these determinations, taking such additional evidence as may be required, or may remand the matter to the family law master, with instructions.

 (4) The finding of the circuit court that the appellant is not entitled to alimony solely because she abandoned the appellee is incorrect. Desertion, the act which the circuit court found formed a basis for denying alimony, is a ground for the outright denial of alimony only if that is the ground upon which the divorce is actually granted. W.Va. Code § 48–2–15(i). Living separate and apart for one year, the ground upon which divorce was granted in the case before us, is a separate ground for divorce and does not disqualify one for alimony under the statute, even though it may be akin to desertion in some circumstances.

 If the divorce is not granted on one of the specific grounds specified by statute as disqualifying one for alimony, and if the parties have not executed a separation agreement, the trial court is to consider "and compare the fault or misconduct of either or both of the parties and the effect of such fault or misconduct as a contributing factor to the deterioration of the marital relationship" in determining the amount, if any, of alimony to be awarded. W.Va.Code § 48–2–15(i). Neither the family law master nor the circuit court in the present case engaged in such a comparative fault analysis such as might justify the increase or decrease of alimony because of the greater fault of one party than the other. Therefore, the finding that the appellant was to be denied alimony by reason of fault is utterly without merit.

A second basis upon which the circuit court denied the appellant alimony was a "waiver"

upon the record. Assuming such a waiver to have been established on the record and the same found not to be the product of coercion, fraud, or other inequity, then such a waiver would operate to deprive the appellant of a later claim to alimony. We cannot find in the record before us the "waiver" mentioned in the order of the circuit court, nor does the report of the family law master make mention of it.

 The record presents a third problem connected with alimony in this case. As previously indicated, the appellant was initially granted temporary alimony by the order of the family law master. After the law master's report was filed with the circuit court, the court, by a further interlocutory order dated July 29, 1994, found that the appellant had remarried on some date that does not appear in the record and required that she repay to the appellee all payments of alimony made to her subsequent to January, 1992, when the court order indicated that she announced on the record that she was waiving alimony. This Court has long recognized that accrued, as opposed to prospective, installments of alimony may be cancelled only on a ground that would warrant a court of equity to set aside a decree because of fraud or other similar equitable circumstance. The posture of our law is summarized in *Rakes v. Ferguson*, 147 W.Va. 660, 665, 130 S.E.2d 102, 106 (1963), as follows:

> The settled law in this jurisdiction is that the provision of Section 15, Article 2, Chapter 48, Code, 1931, as amended, which confers jurisdiction upon a trial court to revise or alter an allowance or make a new decree concerning an award of alimony, pertains to future installments of alimony and does not authorize the court to cancel accrued installments and that such installments may be cancelled only on such ground as would warrant a court of equity to set aside a decree because of fraud or other judicially cognizable and harmful circumstance in procuring the decree. *Robinson v. Robinson*, 131 W.Va. 160, 50 S.E.2d 455; *Korczyk v. Solonka*, 130 W.Va. 211, 42 S.E.2d 814; *Holcomb v. Holcomb*, 122 W.Va. 293, 8 S.E.2d 889; *Harman v.*

*Harman,* 120 W.Va. 199, 196 S.E. 361; *Biggs v. Biggs,* 117 W.Va. 471, 185 S.E. 857. In the opinion in the Biggs case this Court said that "* * * in the absence of a showing of fraud or other harmful circumstance in the procurement of a decree of alimony, accrued installments may not be cancelled. Upon the coming due of such installments, the right thereto of the payee becomes vested." In the opinion in the Harman case this Court used this language: "When installments of alimony accrue, the power of the court, under Code, 48–2–15, to alter, control or cancel them terminates (no fraud appearing), and 'the right thereto of the payee becomes vested.'"

Under these principles, this Court does not believe that the trial court on July 24, 1994, had authority to set aside installments of alimony that accrued to the appellant before that date by reason of the appellant's remarriage. We do note that the law master's recommended order contemplated that such alimony as was payable to the appellant from the appellee ought to terminate upon remarriage, although, for good reason, the interlocutory order in effect prior to July 29, 1994, made no provision regarding remarriage. With regard to the "waiver" of alimony, if the same can be found on the record, there may be a failure to timely enter an order carrying such "waiver" into effect.

In consideration of our review of the alimony issues, we direct that, upon remand of this cause, (1) the existence and date of any "waiver" of alimony by the appellant on the record be determined; (2) the date of the remarriage of the appellant be determined; (3) an appropriate order be entered terminating the accrual of alimony effective as of the date of the waiver, if found to exist, or, if such waiver does not exist, on July 29, 1994, or the date of the appellant's remarriage, whichever is later; and (4) make such order respecting repayment of any alimony after the accrual thereof was properly terminated as is appropriate to the justice of the matter and all the circumstances of the case.

(5) In her brief before this Court, the appellant appears to complain regarding the award of attorney fees and costs made by the family law master and left undisturbed by the circuit court. It appears that the findings and conclusions of the law master were supported by substantial evidence and were not disturbed by the court below. In those circumstances, they will not be disturbed by this Court. *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

For the reasons stated, the judgment of the Circuit Court of Webster County is reversed insofar as it relates to the distribution of the parties' personal property, the order of the circuit court is reversed regarding the 76.56 acre tract, as discussed herein, and this case is remanded for reconsideration of those matters, including the possible revision of the order regarding the 6.24 acre allowances, as may be appropriate to achieve equitable distribution. The court should also make any appropriate further order regarding alimony and the other matters discussed herein, and any order necessary to give effect to any provisions of the family law master's report which have not been duly entered of record. In all other regards the judgment of the Circuit Court of Webster County is affirmed.

Affirmed in part; reversed in part; and remanded with directions.