497 S.E.2d 531

MICHAEL D.C., Plaintiff
Below, Appellee,

v.

WANDA L.C., Defendant
Below, Appellant.

No. 23937.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1997.

Decided Oct. 24, 1997.

Marcelle St. Germain, Appalachian Research & Defense Fund, Logan, for Appellant.

James A. Walker, Logan, for Appellee.

DAVIS, Justice:

This appeal was brought by Wanda L.C.,[1] appellant/defendant, from a final order of the Circuit Court of Mingo County granting a divorce to Michael D.C., appellee/plaintiff. Ms. C. argues on appeal that the circuit court committed error in: (1) granting the divorce

---

1. We adhere to our usual practice in family law cases involving sensitive matters and do not use the last names of the parties. *See State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 559 n. 2, 490 S.E.2d 642, 646 n. 2 (1997); *Elmer Jimmy S. v. Kenneth B.*, 199 W.Va. 263, 268 n. 1, 483 S.E.2d 846, 851 n. 1 (1997); *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996).

on the grounds of adultery, (2) awarding child custody to Mr. C., and (3) distributing the marital property.[2]

## I.

### FACTUAL BACKGROUND

The C.'s were married on October 15, 1971. One child, now thirteen, was born of the marriage. Ms. C. was a homemaker during most of the marriage.[3] Mr. C. was employed as a coal miner.

In August of 1993, Mr. C. filed for divorce on the grounds of adultery. During the divorce proceedings the following facts were established. In 1990, Ms. C. began a "telephone" relationship with a former high school classmate named Russell Lester. The record indicates that Mr. Lester is confined to a wheelchair.[4] From 1990 to 1993, Ms. C. and Mr. Lester spoke on the telephone approximately one hour each day, every day of the week.[5] Mr. C. was unaware of the telephone conversations.[6]

Two of Ms. C.'s neighbors used a police scanner to regularly listen in on Ms. C.'s (cordless) telephone conversations with Mr. Lester. The two neighbors testified that they frequently heard Ms. C. and Mr. Lester talking about their sexual activity. The neighbors also testified they heard Ms. C. and Mr. Lester making plans for additional rendezvous. Testimony was also introduced showing that Ms. C. routinely left her child in the care of babysitters for hours at a time.[7]

In 1991, Mr. Lester was indicted by a Logan County grand jury on a felony sex charge involving a minor.[8] During a search of Mr. Lester's vehicle a state trooper found a nude photograph of Ms. C., depicted in a wooded area. No explanation was given at trial as to how Mr. Lester gained possession of the photograph.[9] There was also evidence that Ms. C. incurred large debts, without Mr. C.'s knowledge. In fact, the evidence revealed that Ms. C. forged Mr. C.'s name in order to obtain the loans.[10]

The circuit court, by order entered February 9, 1996, adopted the family law master's recommendation that the divorce be granted to Mr. C. on the grounds of adultery, that Mr. C. be awarded custody of the parties' child, and that the marital property be equitably divided in a manner to compensate Mr. C. for the loss incurred as a result of Ms. C. forging his signature to obtain loans. Ms. C. timely appealed the circuit court's rulings.

## II.

### STANDARD OF REVIEW

▪ We indicated in syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995) that:

---

**2.** There was a fourth assignment of error that is meritless. Ms. C. contends she was denied due process because the family law master heard "tainted" testimony that she tried to poison Mr. C. The recommendation of the family law master specifically stated that plaintiff's belief that Ms. C. tried to kill him was unsubstantiated and without merit. *See* Syl. Pt. 1, *Rohrbaugh v. Rohrbaugh*, 136 W.Va. 708, 68 S.E.2d 361 (1951) *overruled on another ground by, J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978) ("When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment.").

**3.** Ms. C. was employed for seven years with Sears.

**4.** Ms. C.'s brief alleges Mr. Lester is paralyzed from the waist down. Mr. C.'s brief states that Mr. Lester is paralyzed from the knees down.

**5.** Ms. C. testified that the conversations were about "family."

**6.** There was testimony that in 1993, while Mr. C. was hospitalized for stomach problems (he believed Ms. C. tried to poison him), Ms. C. frequently called Mr. Lester from the hospital during her visits with Mr. C.

**7.** There was also testimony that Ms. C. was seen publicly on several occasions with Mr. Lester both before and during the divorce proceedings.

**8.** Mr. Lester was allowed to plead guilty to a misdemeanor charge of sexual abuse in the third degree.

**9.** Ms. C. alleged that Mr. C. took the picture. Mr. C. denied having ever seen the picture. There was testimony that Mr. Lester's hobby was photography.

**10.** During several depositions of Ms. C., she invoked her right against self-incrimination over one hundred times in response to questions about forging Mr. C.'s signature.

[i]n reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

*See also* Syl. Pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996) ("This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed de novo.").

We held in syllabus point 3 of *Stephen L.H. v. Sherry L. H.,* 195 W.Va. 384, 465 S.E.2d 841 (1995) that "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a [reviewing] court may be inclined to make different findings or draw contrary inferences." On the other hand, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995), quoting, *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). With these principles in view, we examine Ms. C.'s three assignments of error.

## III.

## DISCUSSION

### A.

### The Evidence Was Sufficient to Prove Adultery

■ The circuit court found that there was clear and convincing evidence that Ms. C. engaged in sexual intercourse with Mr. Lester prior to the filing of the divorce com-

plaint. We held in syllabus point 3 of *Rohrbaugh,* that "[w]hen adultery is relied upon as a ground for divorce, evidence which is sufficiently strong, clear and convincing to carry conviction of guilt to the judicial mind will warrant a decree of divorce on that ground." *See* Syl. Pt. 4, *Wolfe v. Wolfe,* 120 W.Va. 389, 198 S.E. 209 (1938) (In part: "The charge of adultery in a divorce suit must be proven by clear, positive and satisfactory evidence."). It was noted in one commentary that "the burden of proof [of adultery] varies from a preponderance of the evidence in some states to beyond a reasonable doubt in others." Adriaen M. Morse Jr., *Fault: A Viable Means of Re-injecting Responsibility in Marital Relations,* 30 U. Rich. L.Rev. 605, 609 (1996). *E.g., Brooks v. Brooks,* 652 So.2d 1113 (Miss.1995) (clear and convincing); *Garner v. Garner,* 16 Va.App. 335, 429 S.E.2d 618 (1993) (clear and convincing); *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155 (1993) (clear and convincing); *Perry v. Perry,* 301 S.C. 147, 390 S.E.2d 480 (Ct.App.1990) (preponderance); *Gilliam v. Gilliam,* 776 S.W.2d 81 (Tenn.Ct. App.1988) (preponderance); *Clements v. Clements,* 255 Ga. 714, 342 S.E.2d 463 (1986) (preponderance); *Bell v. Bell,* 15 Ark.App. 196, 691 S.W.2d 184 (1985) (preponderance); *Ross v. Ross,* 103 Idaho 406, 648 P.2d 1119 (1982) (clear and convincing); *Miller v. Miller,* 306 S.W.2d 175 (Tex.Civ.App.—San Antonio 1957) (clear and convincing).

In reviewing the divorce cases decided by this Court within the past twenty years, we have found only a few cases involving divorces that were granted solely on the grounds of adultery. *See Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991) (granted a divorce on the sole ground of adultery); *Bridgeman v. Bridgeman,* 182 W.Va. 677, 391 S.E.2d 367 (1990) (divorce on grounds of adultery); *Blevins v. Shelton,* 181 W.Va. 544, 383 S.E.2d 509 (1989) (granted divorce on the ground of adultery); *Acord v. Acord,* 164 W.Va. 562, 264 S.E.2d 848 (1980) (grounds for divorce being adultery); *Stacy v. Stacy,* 175 W.Va. 247, 332 S.E.2d 260 (1985) (per curiam) (divorce on the grounds of adultery); *Taylor v. Taylor,* 168 W.Va. 519, 285 S.E.2d 150 (1981) (per curiam) (di-

vorce on the grounds of adultery). None of our recent cases provide any meaningful discussion regarding the elements of proof necessary for a court to grant a divorce on the ground of adultery.

Adultery is not an inconsequential ground for divorce. "Public policy has long condemned adultery as the cardinal sin of marital misconduct.... [N]o violation of the marital vow is more serious or destructive to a marriage than adultery." Joyce Hens Green, John V. Long, Roberta L. Murawski, *Dissolution of Marriage* § 1.1 at 17 (1986). A heavy *fault* price is paid in this state by a party found to have engaged in adulterous conduct. In fact, the legislature has set out only three grounds, in W.Va.Code § 48–2–15(i) (1996), as an absolute bar to alimony.[11] One of those grounds is adultery.[12] It appears that only three other jurisdictions join West Virginia in making adultery a complete bar to alimony.[13]

■ As a basis for divorce, adultery is a ground for divorce in a majority of jurisdictions.[14] The severe consequences of adultery make it imperative that the evidence presented at the trial court level clearly establish that the adulterous conduct occurred. Of course, the mere showing of adultery may not be conclusive as grounds for granting a divorce. In fact, the legislature has articulated specific exceptions to granting a divorce on the grounds of adultery, even where there is a showing of illicit conduct. W.Va.Code § 48–2–14 (1996) prohibits the granting of a divorce on the basis of adultery if any of the following are presented and established as a defense: (1) the two spouses voluntarily cohabited after having knowledge of the adultery, (2) evidence of adultery is based solely upon the uncorroborated testimony of a prostitute or a participant in the affair, (3) the last adulterous act occurred three years before the complaint for divorce was filed, (4) the spouse charging adultery also committed adultery within three years before filing the complaint, (5) the act of adultery was committed due to connivance or procurement by the spouse bringing the charge, or (6) the adultery was condoned by the party charging the other with adultery. Our cases have not previously made clear, however, that the statutory defenses to adultery are affirmative defenses which must be proven by clear and convincing evidence by the party asserting the defense or defenses. *See Palin v. Palin*, 213 A.D.2d 707, 624 N.Y.S.2d 630 (1995) (condonation affirmative defense to adultery); *Seltzer v. Seltzer*, 584 So.2d 710 (La.Ct.App.

11. *See* Syl. Pt. 1, *Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991) ("In enacting our equitable distribution statute, the Legislature did not intend fault to be considered as a factor in determining the division of marital property. However, the Legislature did designate marital fault as a factor to be considered in awarding alimony under the provisions of W.Va.Code, 48–2–15(i).").

12. W.Va.Code § 48–2–15(i) precludes alimony to a party who (1) committed adultery, (2) was convicted of a felony subsequent to the marriage, or (3) abandoned or deserted the other party for six months. *See* Syl. Pt. 7, *Kyle v. Kyle*, 197 W.Va. 252, 475 S.E.2d 344 (1996) ("Desertion is a ground for the outright denial of alimony only if that is the ground upon which the divorce is actually granted."); Syl. Pt. 2, *Rexroad v. Rexroad*, 186 W.Va. 696, 414 S.E.2d 457 (1992) (In Part: "W.Va.Code, 48–2–15(i) bars a person from alimony ... where, subsequent to the marriage, the party has been convicted of a felony, which conviction is final[.]'').

13. "[A]dultery is a complete bar to alimony ... in Georgia, North Carolina, [and] South Carolina[.]" Ira Mark Ellman, *The Place of Fault in*

*A Modern Divorce Law*, 28 Ariz. St. L.J. 773, 787 n. 30 (1996).

14. *See* Ala.Code § 30–2–1(a)(2) (1989); Alaska Stat. § 25.24.050(2) (1996); Ark. Stat. Ann. § 9–12–301(5) (1993); Conn. Gen.Stat. Ann. § 46b–40(c)(3) (1995); Del.Code Ann. tit. 13, § 1505(b)(2) (1993); D.C.Code Ann. § 16–904(b)(3) (1997); Ga.Code Ann. § 19–5–3(6) (1991); Idaho Code § 32–604 (1996); 750 Ill. Ann.Stat. § 5/501(a)(1) (1993); La. Civ.Code Ann. art. 103(2) (1993); Me.Rev.Stat. Ann. tit. 19, § 691(1)(A) (1981); Md. Fam. Law Code Ann. § 7–103(a)(1) (1991); Mass. Ann. Laws ch. 208, § 1 (1987); Miss.Code Ann. § 93–5–1 (1994); N.H.Rev.Stat. Ann. § 458:7(II) (1992); N.J. Stat. Ann. § 2A:34–2(a) (1987); N.M. Stat. Ann. § 40–4–1(c) (1994); N.Y. Dom. Rel. Law § 170(4) (1988); N.D. Cent.Code § 14–05–03(1) (1991); Ohio Rev.Code Ann. § 3105.01(c) (1995); Okla. Stat. Ann. tit. 12, § 1271 (1988); Pa. Con. Stat. Ann. tit. 23, § 3301(a)(2) (1991); R.I. Gen. Laws § 15–5–2 (1996); S.C.Code Ann. § 20–3–10; S.D. Codified Laws Ann. § 25–4–2(1) (1992); Tenn.Code Ann. § 36–4–101(3) (1996); Tex. Fam.Code Ann. § 3.03 (1993); Utah Code Ann. § 30–3–1(3)(b) (1995); Vt. Stat. Ann. tit. 15, § 551(1) (1989); Va.Code § 20–91(1) (1996).

1991) (mental illness affirmative defense to adultery); *Parker v. Parker*, 519 So.2d 1232 (Miss.1988) (recrimination affirmative defense to adultery); *Oyler v. Oyler*, 293 S.C. 4, 358 S.E.2d 170 (Ct.App.1987) (recrimination and condonation affirmative defenses to adultery); *Haring v. Haring*, 125 Ill.App.2d 116, 260 N.E.2d 396 (1970) (recrimination affirmative defense to adultery).

■ In the instant proceeding there was no evidence presented by Ms. C. to establish any of the statutory affirmative defenses to the allegation of adultery. The record does not indicate if or when the parties stopped living together once Mr. C. became aware of Ms. C.'s adulterous conduct. However, this issue is not dispositive on the affirmative defense of condonation.

As a defense in a divorce action, condonation means ... forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness. To establish condonation, there generally must be proof of reconciliation, which implies normal cohabitation of the husband and wife in the family home.

*Nemeth v. Nemeth*, 325 S.C. 480, 481 S.E.2d 181, 185 (Ct.App.1997) (internal quotation marks and citations omitted). More importantly here, however, is the principle of law which holds that "[t]he mere resumption of residence does not constitute a condonation of past martial sins and does not act as a bar to a divorce being granted." *Wood v. Wood*, 495 So.2d 503, 505 (Miss.1986). Therefore, the fact that the parties lived in the same residence after Mr. C. learned of the adulterous conduct is insufficient to establish condonation as an affirmative defense.

■ We have historically described " '[a]dultery [as] peculiarly a wrong of darkness and secrecy, wherein the parties are rarely surprised[.]' " *Witt v. Witt*, 141 W.Va. 43, 52, 87 S.E.2d 524, 529 (1955), quoting 6 M.J., Divorce and Alimony, Sec. 9. However, "[e]ven in this era of declining mores, adultery is usually [still] not committed in the presence of witnesses." *Sibley v. Sibley*, 693 So.2d 1270, 1271 (La.Ct.App.1997). Therefore, "adultery as a ground of divorce may be established by circumstantial evidence when such evidence is sufficient to lead a reasonable and prudent person to a conclusion of guilt." *Rohrbaugh*, 136 W.Va. at 718, 68 S.E.2d at 368. *See Nemeth*, 481 S.E.2d at 183 ("[B]ecause adultery is an activity that takes place in private, the proof may be, and in fact generally will be, circumstantial."). The historical necessity for proving adultery by circumstantial evidence rings true today. It is simply a ground for divorce that generally will not avail itself of direct evidence. Nevertheless, "[a]dultery is a serious accusation ... [and] cannot be proved by second hand gossip or allegations of 'community knowledge.' " *Emfinger v. Emfinger*, 550 So.2d 754, 759 (La.Ct.App.1989). "When the evidence relied on to prove adultery is circumstantial it should be carefully scrutinized and acted upon with caution, and it must be such as to convince the 'guarded discretion' of the [fact finder] that the act has been committed." *Witt*, 141 W.Va. at 52, 87 S.E.2d at 529, quoting 6 M.J., Divorce and Alimony, Sec. 9. The evidence "in such cases ... must be logical, tend to prove the facts charged, and be inconsistent with a reasonable theory of innocence." *Holden v. Holden*, 680 So.2d 795, 799 (Miss.1996).

■ The appellate court in *Sibley, supra*, isolated recurrent themes in the circumstantial proof of adultery and listed them as factors trial courts should look for in determining whether to grant a divorce on the basis of adultery. The factors *Sibley* deemed appropriate for consideration in assessing circumstantial proof of adultery include: (1) the propensity of the parties (spouse and alleged paramour) to commit adultery, (2) the amount of time the parties spent together, (3) whether there was an amorous relationship between the parties, (4) whether other persons were present when an alleged illicit rendezvous occurred, and (5) whether the association between the parties is open or surreptitious. *Sibley*, 693 So.2d at 1271. *See Arthur v. Arthur*, 691 So.2d 997, 1001 (Miss.1997) (where it was held that circumstantial proof of adultery may be shown by establishing that there was (1) an infatuation for a particular person of the opposite sex, and (2) a reasonable opportunity to satisfy

that infatuation); *Sami v. Sami*, 29 Md.App. 161, 347 A.2d 888, 893 (1976) (to establish adultery the circumstantial evidence must clearly establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense). We believe the *Sibley* factors are consistent with the necessary circumstantial evidence required to prove adultery. We therefore adopt the *Sibley* factors as circumstantial proof of adultery. We hasten to point out that the *Sibley* factors are additional tools of analysis and not the sole criteria for evaluating circumstantial evidence to prove adultery.

■ The record clearly indicates that all evidence of adultery in this case was circumstantial. No one testified to actually seeing Ms. C. and Mr. Lester during an illicit rendezvous. Ms. C. and Mr. Lester testified that they did not engage in an illicit relationship. However, Ms. C.'s own testimony established that she spoke on the telephone with Mr. Lester every day of the week for at least an hour. Ms. C. claimed that her conversations with Mr. Lester were only about "family." The family law master heard contradicting testimony from witnesses who overheard many of the conversations between Ms. C. and Mr. Lester. According to the testimony of these witnesses, they repeatedly overheard Ms. C. and Mr. Lester talking about their prior sexual encounters. Moreover the witnesses testified to overhearing Ms. C. and Mr. Lester make plans to rendezvous for additional illicit encounters. There was testimony that, prior to and after the complaint for divorce was filed, Ms. C. was seen in public riding in a vehicle with Mr. Lester. Finally, Mr. Lester was arrested on an unrelated charge by state police officers. The state police officers found a nude photograph of Ms. C. in Mr Lester's vehicle. Neither Ms. C. nor Mr. Lester explained how Mr. Lester came into possession of the nude photograph. However, the evidence did reveal that Mr. Lester was an amateur photographer.

The most significant issue for this Court to consider in reviewing the evidence in this case is that much of the circumstantial evidence turned on witness credibility. We said in *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 395–96, 465 S.E.2d 841, 852–53 (1995):

> There are many critical aspects of an evidentiary hearing which cannot be reduced to writing and placed in a record, e.g., the demeanor of witnesses. These factors may affect the mind of a trier of fact in forming an opinion as to the weight of the evidence and the character and credibility of the witnesses. Thus, the importance of these factors should not be ignored by a reviewing court. Given a family law master's intimate familiarity with the proceedings, the family law master is in the best position to weigh evidence and assess credibility in making the ultimate ruling on disputed issues.

A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations. *See Merriam v. Merriam*, 799 P.2d 1172, 1176 (Utah Ct.App.1990) ("[D]ue regard must be given to the trial court's ability to judge the credibility of witnesses."). Therefore, "we have no hesitation in holding that the [family law master], whose duty it was to pass upon the credibility of the witnesses ..., could here properly find facts from" which to recommend a divorce on the grounds of adultery. *Castle v. Castle*, 118 Vt. 112, 100 A.2d 574, 575 (1953). In light of the impact of witness credibility in this particular case, and the strong circumstantial evidence in general, we find no error in the circuit court granting the divorce on the basis of adultery.

### B.

### Mr. C. Was Properly Awarded Custody

■ The circuit awarded child custody to Mr. C. The child has been in the custody of Mr. C. since the filing of the divorce complaint.[15] However, the record is clear that Ms. C., prior to the initiation of this divorce proceeding, was the primary caretaker. We said in syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d

---

**15.** The record indicates that Mr. C. has remarried.

357 (1981) that "[w]ith reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." In syllabus point 4 of *J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978) we held:

> Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral· standards, that reasonable men would find that her immorality, per se, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

*See Smothers v. Smothers*, 281 So.2d 359, 360 (Fla.1973) ("[A]dultery on the part of a mother—in and of itself—will not necessarily disqualify her to have custody of her children.").

The findings of fact by the family law master, adopted by the circuit court, concluded that defendant's conduct in repeatedly abandoning the child to babysitters in order to rendezvous with Mr. Lester, pressed heavily against awarding her custody of the child.

■ We believe, and so conclude, that evidence of a spouse abandoning a child to a babysitter or leaving the child alone for extended periods of time for the sole purpose of keeping a rendezvous with a paramour for an illicit relationship are factors for the court to consider when making a custody determination.

■ In the instant proceeding, Mr. C. established by clear and convincing evidence that Ms. C. should not have custody of the child, by presenting evidence of many instances wherein she abandoned the child to babysitters to rendezvous with her paramour. Likewise, there was absolutely no evidence presented to the court to show that Mr. C. was incapable of providing proper care for the child.

An additional basis for affirming the custody decision of the circuit court in this case is the fact that the child (now thirteen) expressed a desire to remain in the custody of her father. In syllabus point 7 of *Garska* we said, in part:

> Where there is a child under fourteen years of age, but sufficiently mature that he [she] can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted.

The courts below took due notice of the child's preference in the decision to award custody to Mr. C. Our observations in *Holstein v. Holstein*, 152 W.Va. 119, 127, 160 S.E.2d 177, 183 (1968) are relevant to the disposition of this issue:

> The court has continuing jurisdiction over the matter of the custody of children. It should not, however, upon the hope that all will be well, change the custody unless there is valid evidence that such change is warranted. Stability and a feeling of permanence in his[/her] home life is essential to the well being of a child. He[/She] should not be passed from one parent to the other and back again unless such move is warranted by the evidence.

We find no reason to disturb the circuit court's custody ruling in this case.

### C.

### The Record Fails to Adequately Document the Distribution of Marital Property

■ The final issue before us is the matter of distribution of marital property. We pointed out in syllabus point 1 of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990) that:

> [e]quitable distribution under W.Va.Code, 48–2–1, et seq., is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

Ms. C. contends that the circuit court committed error in reducing the value of her share of the marital property in an amount proportionate to the debt she incurred prior to the divorce by forging Mr. C.'s name to obtain loans. We held in syllabus point 1 of *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988) that:

> In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) *conduct by either party that lessened the value of marital property*. W.Va.Code Sec. 48–2–32(c) (1986). (Emphasis added.)

The record in this case prevents this Court from reviewing the issue of marital property. We said in syllabus point 2 of *Somerville* that "[i]n any order making a division of marital property, the trial court must set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted. W.Va.Code Sec. 48–2–32(f) (1986)." We addressed the consequences of an inadequate final order in a divorce proceeding in *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996), wherein it was said that:

[t]he order must be sufficient to indicate the factual and legal basis for the family law master's ultimate conclusion so as to facilitate a meaningful review of the issues presented. Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings— we must vacate the judgment and remand the case for further findings and development.

Neither the circuit court's final order nor the adopted recommended order of the family law master indicate with any specificity the amount of money Ms. C. dissipated from the marital estate. The recommended order only states that Ms. C. is to receive twenty-five thousand dollars as her share of the real property, after deducting the fraudulently incurred debts. The record is void of any amount of debt incurred by Ms. C. We recently stated in *Pearson v. Pearson*, 200 W.Va. 139, 146, 488 S.E.2d 414, 421 (1997) that:

> [e]vidence presented in a divorce case must be consistent with our Rules of Civil Procedure, Rules of Evidence and Rules of Practice and Procedure for Family Law. A divorce proceeding is not an opportunity for lawyers to circumvent our procedural and evidentiary rules. Those rules are applicable in divorce actions with the same force and vibrancy as in any other civil proceeding.

As we said in syllabus point 8 of *Mayhew v. Mayhew*, 197 W.Va. 290, 475 S.E.2d 382 (1996), "[t]he burden is on both parties to the litigation to adduce competent evidence on the values to be assigned in equitable distribution cases." Therefore, the issue of marital property is reversed and remanded for the sole purpose of setting out adequate findings on the distribution of marital property.[16]

## IV.

## CONCLUSION

In view of the foregoing, we affirm that part of the circuit court's final order granting a divorce on the grounds of adultery and

---

**16.** The circuit court or family law master may take additional evidence, if necessary, solely for the purpose of making appropriate calculations to reduce Ms. C.'s entitlement to marital property in the exact amount determined to have been fraudulently dissipated from the marital estate.

awarding custody of the child to Mr. C. We reverse the circuit court's ruling on the issue of distribution of marital property. We remand the same for the sole purpose of having adequate findings of fact on this issue made a part of the final divorce decree.

Affirmed in part, Reversed in part, and Remanded.

MAYNARD, J., deeming himself disqualified, did not participate in the decision of this case.