# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **E.G.**

**No. 21-0632** (Harrison County 19-JA-191-1)

## MEMORANDUM DECISION

Self-represented petitioner S.G., paternal grandmother to the child, appeals the Circuit Court of Harrison County's June 30, 2021, order denying her permanent placement of E.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jenna L. Robey, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her placement of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Because petitioner was not a party to the abuse and neglect proceedings below, the appendix record on appeal is limited. What is apparent from the record is that petitioner filed a motion to intervene in the abuse and neglect proceedings involving her grandchild, E.G., in April of 2021. In response to this motion, the guardian alleged that petitioner had no relationship with the child, who had been in the DHHR's custody for approximately seventeen months and had resided with her foster family for the entirety of her life. According to the guardian, in that period, petitioner never requested visits with the child. The guardian acknowledged that petitioner previously requested placement of the child, but that request was denied because the child's abusing parents lived in petitioner's home. In the response, the guardian further acknowledged that petitioner moved from the home she shared with the parents and later passed a home study.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

However, in November of 2020, the guardian and a DHHR worker visited petitioner's new home, which the guardian described as "completely smoke filled." According to the guardian, E.G. is blind and the extensive smoke in the home presented a health issue. Petitioner showed the guardian a room designated for E.G., which also contained a hot water tank "separated from the room by a fabric curtain," creating a safety hazard for the blind child. The guardian also noted that E.G.'s father explained during his dispositional hearing that he continued to reside at petitioner's home at times. Based on the foregoing, the guardian asserted that moving the child from her foster home and into petitioner's residence would not be in her best interests. The guardian asserted that the home was not appropriate for the child's disabilities and that petitioner would not protect the child from the father. The guardian also noted that the child was bonded to her foster parents and that their home was better situated to address the child's special needs.

In May of 2021, the court held a hearing on petitioner's motion to intervene and concluded that it was more appropriately a motion for placement of the child. The court noted that both parents' rights had been terminated and that the child had been in her current placement since she was discharged from the hospital following her birth. In addition to her blindness, the court noted that the child also suffered from an abnormal pituitary gland and required regular appointments with a pediatrician, neurologist, ophthalmologist, and endocrinologist. Further, the child's developmental delays required ongoing treatment with a developmental therapist, a blind specialist, an occupational therapist, a speech therapist, and a physical therapist.

A representative of the National Youth Advocacy Program testified that the child could not live in a home with clutter or anything lying on the floor because it would inhibit her mobility and pose a fall danger. The witness described the child as bonded to the foster family and described the child's "extreme stranger anxiety." According to the witness, the child would become upset even with her providers if she had not had contact with them on a regular basis. Accordingly, the witness did not believe it was in the child's best interest to be moved to petitioner's home.

In regard to petitioner, the court found that she had no relationship with the child, had not had visitation with the child, and had not requested such visitation. There were also questions as to where petitioner lived, as she owned two homes. When petitioner left her first home that she shared with the child's parents, she "left multiple children under the age of [eighteen] in that home." Additionally, during the proceedings, law enforcement responded to that first home on a report that an animal was not being properly cared for. When they arrived, they found thirteen to fifteen people residing in the home, including several minors. The home was also in deplorable condition with multiple animals, feces, flies, and a strong odor. "There was also very little space to walk through due to the extreme clutter in the home." The court found that petitioner was aware of the condition of this home, yet she failed to take any steps to protect her own minor children and allowed them to stay in that home. There were also discrepancies about who lived in the second home with petitioner, as she provided conflicting information to the DHHR. Based on the evidence, the court found that petitioner would not protect E.G. from the child's father and that she was unable to properly care for E.G., as evidenced by her lack of care of the children currently in her custody. The court recognized that the Legislature has established a preference for placement of children with grandparents, but nonetheless found that the child's best interest dictated denying

petitioner's request for placement. As such, the court denied petitioner's request for placement. It is from the resulting order that petitioner appeals.[2]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to deny her placement of the child. In support, petitioner simply lists a series of factual findings from the court that she claims are erroneous. However, petitioner provides no evidence in support of her challenge to these findings. Further, the specific findings with which she takes issue, such as whether she requested visitation, would not care for or protect E.G., or that her home was cluttered, are all findings that turned on credibility of witnesses below. Indeed, if petitioner is to be believed, she testified contrarily to all of these findings. However, the record shows that the DHHR presented evidence in support of these findings. Accordingly, we decline to disturb these credibility determinations on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Ultimately, the record shows that the court made extensive findings that placement with petitioner was not in the child's best interest. As we have explained,

> "West Virginia Code § 49-3-1(a) provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be

---

[2]The parents' parental rights were terminated. The permanency plan for the child is adoption in the current foster home.

overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." Syllabus point 4, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

Syl. Pt. 2, *In re J.P.*, 243 W. Va. 394, 844 S.E.2d 165 (2020). Further, we have explained that "[t]he preference is just that—a preference. It is not absolute." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Importantly, "while this preference must be balanced with the best interests of the child, it is the child's best interest that serves as the ultimate determinable factor." *J.P.*, 243 W. Va. at 401, 844 S.E.2d at 172. As set forth above, the child has special needs that require extensive appointments and therapies, in addition to requiring specific conditions in her home in order to ensure her safety. As the circuit court found, petitioner was unable to meet the child's needs and ensure her safety. Because the evidence clearly demonstrates that placement in petitioner's home would have been contrary to the child's best interests, we find no error in the court's ruling.

Finally, we note that the limited record on appeal contains a finding that petitioner was unable to properly care for other children in her custody during the proceedings and that she subjected them to "deplorable" conditions in her home. Accordingly, the DHHR is directed to determine if the filing of a petition alleging abuse and/or neglect by petitioner in regard to any other children is appropriate and to take any additional steps necessary to protect those children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 30, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn