**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.M., R.M., B.M., and A.F.**

**No. 23-45** (Kanawha County 22-JA-31, 22-JA-32, 22-JA-33, and 22-JA-34)

**MEMORANDUM DECISION**

Petitioner Mother J.F.[1] appeals the Circuit Court of Kanawha County's December 21, 2022, order terminating her parental rights to J.M., R.M., B.M., and A.F., claiming that, as a victim of domestic violence, her parental rights were erroneously terminated based on her continued contact with her abuser.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2022, the DHS filed a petition and amended petition alleging that petitioner exposed the children to domestic violence. According to the petitions, petitioner and C.M. ("the father")[3] engaged in extreme domestic violence in the home and physically attacked other individuals together. The petition further alleged that the father repeatedly threatened to kill petitioner, the children, and other relatives; repeatedly struck petitioner, the children, and other relatives; and violated domestic violence protective orders. In reference to the father's violation of one protective order, petitioner specifically informed law enforcement that "it was pointless, he

---

[1]Petitioner appears by counsel Benjamin Freeman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Heather L. Olcott. Counsel D. Randall Clarke appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]Although C.M. is the father to only some of the children at issue in this appeal, he will be referred to as "the father" throughout for ease of identification.

1

won't leave me alone *and I won't leave him alone*." (Emphasis added). The DHS additionally alleged that petitioner had a history of failing to attend hearings on domestic violence petitions, violating protective orders she had obtained, and bailing the father out of jail for prior offenses. Specific to the children, the DHS alleged that one child was in petitioner's vehicle when the father "ran [her] off the road . . . , then broke her driver's side window with his fist." The DHS also alleged that the father stepped on one child during a physical altercation and threw then-one-year-old B.M. into a crib before physically assaulting petitioner, among other allegations.

At a hearing in March 2022, petitioner stipulated to her adjudication and admitted that she exposed the children to domestic violence. The court found that the children were abused and neglected and adjudicated petitioner as an abusing parent. The court then granted petitioner's motion for a post-adjudicatory improvement period and required her to participate in parenting and adult life skills education, participate in domestic violence counseling, and have no contact with the father, among other requirements. However, at a hearing in September 2022, both the DHS and the guardian moved to terminate petitioner's improvement period because she was "having almost daily contact" with the father and was "also providing money to him on a regular basis." The court granted the motion and set the matter for disposition.

In December 2022, the parties appeared for the dispositional hearing, during which the DHS presented testimony from a Child Protective Services ("CPS") worker. According to the CPS worker, petitioner failed to comply with the terms and conditions of her improvement period because of recent failed drug screens and her continued contact with the father, as evidenced by emails, video calls, and phone calls between petitioner and the incarcerated father. The CPS worker testified that petitioner continued to "deny any substance abuse" and "attempt[ed] to explain her contact with [the father] due to her fears for her safety," despite the fact that "she never reached out to the Department stating that [the father] was contacting her and she was in fear for her life." Further, the CPS worker testified that "[t]he nature of the contact does not appear that she is in fear for her life" as "[s]ome of it is sexually explicit." The CPS worker described petitioner as "quite defiant in the phone calls" as she informed the father that she was faithful to him and "that they're going to get the children back." Citing continued concerns with visitation and petitioner's neglect of one child's post-surgery recovery needs, the CPS worker explained that "[i]t does not appear that the services are effective" despite having been provided since 2019. The CPS worker further explained that although petitioner was frequently the victim of domestic violence, she had also perpetrated domestic violence on more than one occasion. Petitioner also testified and claimed that she only continued her contact with the father out of fear. She further denied having abused drugs. Finally, a service provider testified that although petitioner had made some progress, petitioner's refusal to fully participate prevented her from improving.

Based on the evidence, the court found that petitioner failed to complete the ordered services or cease contact with the father. Critically, the court cited petitioner's "defiant attitude" while voluntarily communicating with the father against the court's order. Accordingly, the court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's best interests required

termination of her parental rights. As such, the court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner argues that termination of her parental rights upon evidence of continued contact with the father was inappropriate because she was the victim of his domestic violence and only engaged in this contact out of fear. However, petitioner ignores the fact that the court below was presented with this excuse and found it uncompelling in light of evidence of her defiant attitude during the discussions, in which she was sexually explicit with the father and discussed how the pair would reobtain custody of the children. Further, petitioner's testimony in this regard was undercut by testimony from a CPS worker that petitioner never explained this contact or her ongoing fear of the father to the DHS. These are credibility determinations that we refuse to disturb on appeal, and petitioner's arguments predicated on this interpretation of the evidence cannot entitle her to relief. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Moreover, petitioner's continued contact with the father was not the sole basis for the court's determination. As the record shows, the court based termination of parental rights on other conditions, such as petitioner's failure to follow through with services and the fact that the DHS's remedial efforts had been ongoing for several years. Based on the evidence that petitioner did not benefit from the services offered, the court concluded that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d)(3) (establishing that failure to "respond[] to or follow[] through with a reasonable family case plan or other rehabilitative efforts" constitutes a situation in which there is no reasonable likelihood conditions of abuse and neglect can be substantially corrected).

In addition, petitioner argues that the conditions of abuse and neglect were remedied by the father's criminal conviction. We find no merit to this argument, as the fact that the father will remain incarcerated has no bearing on petitioner's failure to properly parent the children. While the record shows that she was the victim of the father's physical abuse, the record also demonstrates that petitioner engaged in violence and violated protective orders she obtained. The evidence overwhelmingly supports the circuit court's findings in support of termination of petitioner's parental rights, and we find no error in the court's decision not to impose a less restrictive dispositional alternative. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood that conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that

---

[4]The fathers' parental rights were also terminated. The permanency plan for the children is adoption in their current placements.

there is no reasonable likelihood . . . that conditions of neglect and abuse can be substantially corrected").

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 21, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn