# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 8, 2024**

C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JERRY BOYERS,**
**Claimant Below, Petitioner**

**vs.) No. 22-ICA-284**          (WorkForce Bd. of Review Case No. R-2022-1749)

**WORKFORCE WEST VIRGINIA,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Jerry Boyers appeals the November 3, 2022, decision of the WorkForce West Virginia Board of Review ("Board") which reversed the decision of the Board's administrative law judge ("ALJ"), which reversed the Deputy's decision to retroactively deny Mr. Boyers' application for Pandemic Unemployment Assistance ("PUA"). Respondent WorkForce West Virginia ("WorkForce") filed a response.[1] Mr. Boyers did not file a reply. The issue on appeal is whether the Board erred in reversing the ALJ's decision finding that WorkForce failed to meet its burden of proving that Mr. Boyers was ineligible for PUA benefits and was therefore not entitled to reimbursement for overpayments from Mr. Boyers.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision, but no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure. For the reasons set forth below, the decision of the Board is vacated and remanded for further proceedings consistent with this decision.

This action arises from a PUA Disqualification and Overpayment Determination made by WorkForce, overturned by the ALJ, and reinstated by the Board. Mr. Boyers applied for PUA benefits on April 29, 2020. In his application, Mr. Boyers stated that he had been employed since January 5, 2020, working thirty hours per week as a dishwasher for Duarte Restaurants, LLC, at the Aquarium Lounge in Clarksburg, West Virginia. Mr. Boyers reported that his employer reduced his hours due to COVID-19 and that he became unemployed due to the COVID-19 pandemic. He stated his last date of employment was March 27, 2020.

---

[1] Mr. Boyers is represented by Angela M. White, Esq. WorkForce is represented by Kimberly A. Levy, Esq.

1

As a result of his application, Mr. Boyers was approved and received benefits. Payments included a weekly payment of $682.00 on May 18, 2020; a lump sum payment of $4,706.00 on May 21, 2020, for seven weeks of benefits; a weekly payment of $682.00 for the week of May 26, 2020; a weekly payment of $639.00 for the week of June 8, 2020; a lump sum payment of $3,324.00 on July 13, 2020, for five weeks of benefits; weekly payments of $682.00 for the weeks of July 20, 2020, and July 27, 2020; weekly payments of $142.00 for the weeks of August 3, 2020, to December 21, 2020; and weekly payments of $412.00 for the weeks of January 7, 2021, to March 15, 2021.

Mr. Boyers' claim for PUA benefits was reviewed and investigated on or about June 14, 2022, more than two years after his application. On June 15, 2022, WorkForce issued a disqualifying determination. In that decision, WorkForce reported speaking to Erica Duarte, one of the owners of Duarte Restaurants, LLC, which operated Aquarium Lounge. Ms. Duarte stated that Aquarium Lounge had shut down following West Virginia guidelines issued on March 14, 2020, and that Mr. Boyers had stopped working before that state shutdown date. Based on this evidence, the WorkForce Deputy found that Mr. Boyers had voluntarily separated from employment prior to the COVID-19 pandemic, and therefore his unemployment was not caused by the pandemic. Accordingly, the Deputy determined that Mr. Boyers was ineligible to receive PUA benefits effective March 22, 2020, to June 19, 2021. A second letter was issued by WorkForce on June 15, 2022, finding that Mr. Boyers was disqualified effective March 14, 2021, to June 19, 2021, alleging the same reasons for disqualification. As a result of the disqualification findings, Mr. Boyers was alleged to have received four overpayments totaling $23,656.00. (The first overpayment was allegedly $7,756.00 for March 22, 2020, to March 13, 2021; the second overpayment was allegedly $10,200.00 for March 29, 2020, to July 25, 2020; the third overpayment was allegedly $2,400.00 for July 26, 2020, to September 5, 2020; and the fourth overpayment was allegedly $3,300.00 for December 27, 2020, to March 13, 2021.)

Mr. Boyers appealed the Deputy decision on June 22, 2022. On September 6, 2022, a telephonic hearing was held before the ALJ. WorkForce Employment Program Specialist Alexander Naylor appeared on behalf of the agency and Mr. Boyers appeared pro se, by phone. The employer, Duarte Restaurants, did not participate. No witnesses were presented by either party.

Mr. Naylor testified as to his understanding of the case based on "case notes" that appeared to have been generated by other WorkForce employees.[2] Most critically, he testified as to the statements allegedly made by Erica Duarte when she was interviewed, apparently more than two years later, by another unnamed WorkForce employee about Mr.

---

[2] The case notes that Mr. Naylor relied on were not presented to the ALJ at the hearing or made part of the appendix record.

Boyers' date of separation. Mr. Naylor testified that on June 14, 2022, a WorkForce employee spoke with Ms. Duarte who indicated that Mr. Boyers stopped reporting to work before the state-mandated shutdown and that he did not give a reason, but he just stopped coming to work. Ms. Duarte recalled that the restaurant shut down around March 14, 2020, and that Governor Justice announced at the same time that nonessential businesses were to shut down by March 24, 2020.

Mr. Boyers testified at the hearing that before being employed by Duarte Restaurants, he had just been discharged from a rehabilitation facility and was living in a halfway house. He stated that one of the requirements of the halfway house was that he maintain employment, so he was looking for a job but was having difficulty finding one. He testified that a friend and co-resident of the halfway house who worked at the Aquarium Lounge told him that the restaurant needed a dishwasher for New Year's Eve. Mr. Boyers testified that he thereafter got a job as the dishwasher there and worked evenings, usually from 4:00 p.m. until 10:00 p.m. He testified that he worked there regularly until the COVID-19 pandemic started and the master chef and the friend who helped him get the job told him that the restaurant was going to shut down and he would no longer be needed. Mr. Boyers stated that he had very little interaction with Ms. Duarte, who he said was not at the restaurant often. He testified that Ms. Duarte's statement that he left before the COVID-19 shutdown was not true and that he would not have left the job voluntarily because of the employment requirement of the halfway house.

Mr. Boyers testified that the friend who got him the job at the restaurant told him to sign up for the PUA benefits and helped him do so. He also testified that the friend also applied for PUA benefits at the same time and for the same reason.

The ALJ issued a decision on September 9, 2022, finding that WorkForce spoke with the employer on or about June 14, 2022, who asserted that Mr. Boyers stopped showing up for work before the business closed because of the pandemic on June 16, 2020.[3] ALJ Peak found that WorkForce did not prove that Mr. Boyers quit his job voluntarily prior to the pandemic-related closure, and that based on the testimony presented at the hearing, WorkForce failed to meet its burden of proving that Mr. Boyers was ineligible for PUA benefits. Therefore, the ALJ found that Mr. Boyer was eligible for PUA benefits and was not overpaid, reversing the underlying decision.

WorkForce appealed the decision to the Board on September 13, 2022, arguing that "it was more likely than not that the Claimant had left employment with Duarte Restaurants

---

[3] The June 16, 2020, closure date was not the date presented into evidence at the hearing and was apparently a typographical error, as the closure date in evidence was March 14, 2020.

3

prior to the onset of the Covid-19 pandemic." WorkForce argued that the ALJ erred in finding that the restaurant had closed on June 16, 2020.

The Board issued a decision on November 3, 2022, overturning the ALJ's decision and reinstating the Deputy's disqualification and overpayment determinations. The Board's decision states that it held a hearing on October 20, 2022, however, Mr. Boyers claims that no notice of the hearing date was provided to the parties, the parties did not appear, and the Board took no testimony or evidence. In its decision, the Board found that Mr. Boyers' unemployment was not caused directly by a COVID-19-related reason. The Board went on to find that the "claimant ceased showing up for work after March 27, 2020 and that the workplace did not close because of the pandemic until June 16, 2020. The record therefore reflects that the claimant left his job nearly two months before the workplace ceased operations." The Board's decision again cites the erroneous closure date from the ALJ's decision when it found, "[t]he record here clearly reflects that the claimant left his employment nearly two months before the workplace ceased operations because of the Covid-19 pandemic. Under these circumstances, it is not reasonable to conclude that the claimant was unemployed as a direct result of the pandemic." The Board found that Mr. Boyers was ineligible for PUA benefits. It is from this decision that Mr. Boyers now appeals.

In appeals from the Board, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. Workforce W. Va.,* __ W. Va. __, __, 895 S.E.2d 236, 241 (Ct. App. 2023) (alteration in original) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 563, 453 S.E.2d 395, 397 (1994)).

On appeal, Mr. Boyers asserts three assignments of error. First, he argues that the Board's reliance on a WorkForce representative's communication with his employer as to his last date of employment was inappropriate where WorkForce could have subpoenaed Ms. Duarte as a witness, or the employer could have participated. He alleges that since there was no affidavit or attestation from the employer introduced into evidence, or even a business record showing the alleged date of his separation from employment, it was error for the Board to rely on this vague statement that did not identify a specific date he last worked. Mr. Boyers posits that the ALJ properly weighed Mr. Naylor's testimony and found that WorkForce failed to meet its burden, but the Board's reversal based on a separation gleaned from vague, uncorroborated, thirdhand testimony deprived him of his right to a fair hearing because he could not cross-examine Ms. Duarte or the unnamed investigator who took her statement.

His second assignment of error is that the Board's explicit finding that the restaurant closed on June 16, 2020, "nearly two months" after Mr. Boyers alleges he stopped working, is clearly wrong and should not be a basis for ruling against him. Finally, Mr. Boyers argues that the Board should have given deference to the findings of fact made by the ALJ because she was in a unique position to assess witness credibility when she took the testimony of Mr. Naylor and Mr. Boyers. He asserts that when the Board overruled the ALJ's credibility determination by finding Mr. Boyers' testimony to be not credible, the Board violated the principle that, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations. . ." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

In response, WorkForce argues that the Board did not violate Mr. Boyers' due process rights or deprive him of a fair hearing. WorkForce claims that Mr. Boyers had notice of the arguments raised against him in the Deputy's decision and that he could have subpoenaed Ms. Duarte or any other witness to the hearing and could have asked questions of Mr. Naylor during the proceeding. Furthermore, WorkForce contends that the inclusion of the incorrect closure date in the order constitutes harmless error. Regardless of whether the restaurant closed in March 2020 or June 2020, WorkForce concluded from the interview with Ms. Duarte that Mr. Boyers had quit working before the COVID-19 related closure, and therefore his separation was not caused by COVID-19. As Mr. Boyers left employment for unknown reasons before the closure of the restaurant, he does not meet the definition of a "covered individual" under the CARES Act and is not entitled to PUA benefits.

Upon review, we find multiple errors in the Board's decision. First, we find that the reliance on the incorrect date of closure of the restaurant, while likely the result of inadvertent incorporation of an error from the ALJ's decision, causes one of the decision's essential findings of fact to be clearly wrong. There was no testimony or evidence presented to establish that the Aquarium Lounge closed due to COVID-19 on June 16, 2020, and so to use that date to establish that Mr. Boyers must have separated from his employment before the closure is clear error. The Board's decision also includes explicit findings of fact that Mr. Boyers self-certified that he worked until March 27, 2020, and that his employer stated that he stopped showing up for work "after March 27, 2020" which contradicts the assertion that he actually quit coming to work earlier than he claimed. In fact, Mr. Naylor testified that Ms. Duarte stated that she recalled that the restaurant closed around March 14, 2020, which was nearly two weeks before the Board's decision states Ms. Duarte alleged that Mr. Boyers stopped coming to work. Plainly, the Board's findings of fact regarding the timeline of Mr. Boyers' separation from employment as it relates to the closure of the restaurant due to COVID-19 do not comport with the evidence in the record and, even under our deferential standard of review, are clearly wrong. Accordingly, we must vacate the Board's decision and remand to the Board for further evidentiary proceedings, as necessary, to remedy these errors.

5

Further, this Court notes that the Board did not consider Governor Justice's Executive Order Nos. 4-20, which established certain PUA benefits due to the COVID-19 pandemic, and 11-21, which precludes WorkForce from collecting PUA overpayments in the absence of fraud on the part of the claimant. Executive Order 11-21 provides, in part:

> The provisions of Chapter 21A, Article 10, Section 21 of the Code of West Virginia requiring the commissioner of WorkForce West Virginia to collect non-fraudulent unemployment overpayments shall be suspended, provided: (a) The overpayment was received without fault on the part of the claimant; and (b) Recoupment of the overpayment would be against equity and good conscience.

Regardless of Mr. Boyers' initial eligibility for PUA benefits, based on the Board's decision it does not appear that it considered Executive Order 11-21 in its analysis as to whether Mr. Boyers should be required to repay the PUA benefits that he received.[4]

Accordingly, we vacate and remand to the Board for further consideration as to whether Governor Justice's Executive Orders preclude WorkForce from collecting the alleged overpayments of PUA benefits, and to the extent necessary, further factual findings regarding Mr. Boyers' date of separation, consistent with this decision.

Vacated and Remanded.

**ISSUED:** February 8, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[4] We have remanded similar matters involving benefits overpayments for consideration of Executive Order 11-21. *See Workforce W. Va. v. Jonese*, No. 22-ICA-131, 2023 WL 5695915, at *4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Workforce W. Va. v. Kirker*, No. 22-ICA-125, 2023 WL 5696097, at *4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Fields v. Charleston Area Med. Ctr.*, No. 22-ICA-266, 2023 WL 6290652, at *3 (W. Va. Ct. App. Sept. 26, 2023) (memorandum decision).