## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.D.-1, I.D., and C.D.-2**

**No. 23-94** (Pocahontas County CC-38-2022-JA-23, CC-38-2022-JA-24, and CC-38-2022-JA-25)

## MEMORANDUM DECISION

Petitioner Grandfather R.B.[1] appeals the Circuit Court of Pocahontas County's January 23, 2023, order terminating his custodial rights to C.D.-1, I.D., and C.D.-2,[2] arguing that the circuit court improperly adjudicated him of neglecting the children. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2022, the DHS filed a petition alleging that petitioner neglected the children by failing to supply them with necessary supervision, medical care, and education. Petitioner is the children's maternal grandfather. The petition detailed that the children had been in the care of petitioner and his wife, E.B., since the children's biological mother passed away in June 2022. The petition noted that petitioner had a substantiated Child Protective Services ("CPS") history regarding his own children and that he is a convicted felon. The petition indicated that law enforcement responded to a referral alleging that petitioner's adult children, who intermittently lived in petitioner's home, were involved in a domestic violence incident. It was further alleged that those two individuals were using illegal drugs. Two days after the incident, a CPS employee visited the home and observed that I.D. suffered from poor dental health. The CPS employee noticed that a current respondent in another abuse and neglect proceeding was present at

---

[1]Petitioner appears by counsel Kristopher Faerber. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Jason R. Trautwein. Counsel Michael Witt appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two of the children share the same initials, we will refer to them as C.D.-1 and C.D.-2.

petitioner's home. The petition noted that a family court order entered in July 2022 did not grant anyone custody of the children, even though the children's paternal aunt had filed for guardianship. Instead, the family court removed the case to circuit court due to the pending abuse and neglect proceedings.

In September 2022, the court memorialized its preliminary hearing in an order. The court found that petitioner's adult child, N.M., was living in petitioner's home and taking care of the children when CPS visited in July. At the time, N.M. had an active CPS case, and her own children were in foster care. The court found probable cause that imminent danger existed at the time of the children's removal because petitioner was unable to get the children medical care and schooling and he allowed N.M. to help care for the children.

A Court Appointed Special Advocate ("CASA") report filed in November 2022 described the children's circumstances. The children were never enrolled in school and C.D.-1 should have already completed kindergarten. All three children had dental decay so severe that it required surgery, and I.D. would have to have the majority of her teeth removed. Additionally, an ear, nose, and throat doctor found a bead lodged in I.D.'s ear and could not determine how long it had been lodged there. Petitioner and his wife did not participate in multidisciplinary team meetings held in September and December of 2022. The CASA ultimately recommended that the children be adopted in the current placement.

The court took evidence over the course of two adjudicatory hearings. The CPS employee who visited petitioner's home in July 2022 testified that at the visit she learned that N.M. was residing in petitioner's home and helping take care of the children. A CPS supervisor testified that she received a call from a medical center inquiring if the children were in the DHS's custody, as petitioner's spouse was unable to give consent for the children to receive medical care. During his testimony, petitioner confirmed that his adult child, N.M., lived in his home and that his children and grandchildren lived in his home intermittently. Petitioner testified that he had no CPS history, which was later found to be untrue. He also testified that N.M. came to live with him after she was released from jail. Petitioner admitted that he had a prior felony conviction. When asked if he allowed inappropriate individuals to be in the presence of the children, he stated that "they [were] not inappropriate to me [because] they [were] family."

The CPS supervisor who signed the initial petition was the last individual to testify. She testified that DHS policy does not allow CPS to place children with relatives who are felons or who have a substantiated CPS history. She stated that N.M. had an ongoing abuse and neglect proceeding due to alleged drug use and that petitioner and his wife, E.B., did have a substantiated CPS history. She opined that due to these circumstances, petitioner was not an appropriate placement for the children. At the end of the hearing, the court held that petitioner and his wife were the custodians[3] of the children at the time of the initial petition. Ultimately, the court found that the children's health was threatened by petitioner's failure to supply the children with

---

[3]West Virginia Code § 49-1-204 provides: "'Custodian' means a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement."

necessary supervision, medical care, and education. Petitioner was adjudicated of neglecting the children.

Given that petitioner challenges only his adjudication, it is sufficient to note that the circuit court terminated his custodial rights following a dispositional hearing in January 2023.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner argues solely that the circuit court improperly adjudicated him of neglecting the children. However, the only argument petitioner advances in support of this assignment of error is that the circuit court ignored his "meaningful testimony" and favored other evidence in reaching adjudication. Petitioner acknowledges that this Court will not ordinarily disturb the lower court's determinations regarding the weight and credibility of evidence, but states that it is proper to do so here. However, we have held that "[a] reviewing court *cannot* assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (emphasis added). Moreover, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). The circuit court appropriately exercised its authority to assign weight and credibility to the evidence presented. Therefore, we decline to disturb the circuit court's ruling.

Instead, we note that the court was presented with ample evidence that petitioner neglected the children's medical needs to a degree that surgery was required for all the children. Further, petitioner admitted to permitting individuals whose own children had been removed from their custody to supervise the children and explained that he did not believe this constituted neglectful conduct. This clearly satisfies the applicable burden of proof to establish that petitioner, at a minimum, neglected the children. *See* W. Va. Code § 49-1-201 (defining "neglected child," in part, as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's . . . custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education"); W. Va. Code § 49-4-601(i) (imposing a clear and convincing burden of proof at adjudication).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 23, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

---

[4]Petitioner's wife's custodial rights were also terminated. The children's biological parents are both deceased. The permanency plan for the children is adoption in the current placement.

**CONCURRED IN BY**:


Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn