**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **C.D.-1, I.D., and C.D.-2**

**No. 23-104** (Pocahontas County CC-38-2022-JA-23, CC-38-2022-JA-24, and CC-38-2022-JA-25)


# MEMORANDUM DECISION


Petitioner Grandmother E.B.[1] appeals the Circuit Court of Pocahontas County's January 23, 2023, order terminating her custodial rights to C.D.-1, I.D., and C.D.-2, arguing that the circuit court improperly determined that the children were in imminent danger and adjudicated her as an abusing parent.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On July 27, 2022, the DHS obtained emergency custody of the children upon allegations more fully set forth in a petition filed five days later. In the petition, the DHS alleged that petitioner neglected the children by failing to supply them with necessary supervision, medical care, and education. Petitioner is the children's maternal grandmother. The petition detailed that the children had been in the care of petitioner and her husband, R.B., since the children's biological mother passed away in June 2022. The petition noted that petitioner had a substantiated Child Protective Services ("CPS") history regarding her own children and that R.B. is a convicted felon. The petition indicated that upon investigating a referral, a CPS employee visited the home and observed that I.D. suffered from poor dental health. The CPS employee noticed that petitioner's daughter, N.M., who was a current respondent in another abuse and neglect proceeding, was present at

---

[1]Petitioner appears by counsel Eric M. Francis. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Deputy Attorney General Steven R. Compton. Counsel Michael Witt appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two of the children share the same initials, we will refer to them as C.D.-1 and C.D.-2.

petitioner's home. The petition noted that a family court order entered in July 2022 did not grant anyone custody of the children, even though the children's paternal aunt had filed for guardianship. Instead, the family court removed the case to circuit court due to the pending abuse and neglect proceedings.

In September 2022, the court memorialized its preliminary hearing in an order. The court found that the children's mother died approximately one month prior to the children's removal while she was living in petitioner's home. Further, the evidence confirmed that N.M. was living in petitioner's home and taking care of the children when CPS visited in July. At the time, N.M. had an active CPS case, and her own children were in foster care. The court also found that on July 25, 2022, a DHS worker received a call from a local medical facility inquiring if the DHS had custody of the children after petitioner unsuccessfully attempted to obtain medical care for at least one child. Based upon this evidence, the court found probable cause that imminent danger existed at the time of the children's removal because petitioner was unable to provide the children with medical care and schooling and she allowed N.M. to help care for the children. In reaching this determination, the court also cited petitioner's prior CPS history.

A Court Appointed Special Advocate ("CASA") report filed in November 2022 described the children's circumstances. The children were never enrolled in school and C.D.-1 should have already completed kindergarten. All three children had dental decay so severe that it required surgery, and I.D. would have to have the majority of her teeth removed. Additionally, an ear, nose, and throat doctor found a bead lodged in I.D.'s ear and could not determine how long it had been lodged there. Petitioner and her husband failed to participate in a September 2022 multidisciplinary team meeting. The CASA ultimately recommended that the children be adopted in the current placement.

The court took evidence over the course of two adjudicatory hearings. The CPS employee who visited petitioner's home in July 2022 testified that at the visit she learned that N.M. was residing in petitioner's home and helping take care of the children. A CPS supervisor testified to the call she received from the medical center inquiring about the children's custodial status. Petitioner testified that she was aware that her adult child, N.M., was visited by the DHS regarding her children and did not have physical custody of her children. She further testified that she did not make any inquires as to why N.M. did not have custody of her children or the circumstances of N.M.'s abuse and neglect proceedings. Petitioner also testified that at the time of the petition, N.M. had recently been released from a mental hospital. Petitioner confirmed that two of her other adult children, who also did not have physical custody of their children, were intermittently living in her home. Petitioner's testimony reflected that a total of three of her children did not have custody of their own children and all three of those individuals intermittently resided with petitioner and had contact with the children. Petitioner's husband, R.B., testified that he had no CPS history, which was later found to be untrue, and admitted that he had a prior felony conviction.

The CPS supervisor who signed the initial petition was the last witness at adjudication. She testified that DHS policy does not allow CPS to place children with relatives who are felons or who have a substantiated CPS history. She stated that N.M. had an ongoing abuse and neglect proceeding due to alleged drug use and that petitioner and her husband did have a substantiated CPS history. She opined that due to these circumstances, petitioner's home was not an appropriate

placement for the children. At the end of the hearing, the court held that petitioner and her husband were the children's custodians[3] when the initial petition was filed. Ultimately, the court found that the children's health was threatened by petitioner's failure to supply the children with necessary supervision, medical care, and education. Petitioner was adjudicated of neglecting the children.

Given that petitioner challenges only the children's emergency removal and her adjudication, it is sufficient to note that the circuit court terminated her custodial rights following a dispositional hearing in January 2023.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first asserts that the circuit court erred in determining that the conditions alleged in the initial petition could support an imminent danger finding, as required by law. We find, however, that this argument is not supported by the record.

According to West Virginia Code § 49-4-303,

[p]rior to the filing of a petition, a child protective service worker may take the child or children into his or her custody (also known as removing the child) without a court order when:
(1) In the presence of a child protective service worker a child or children are in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children, as that phrase is defined in section two hundred one, article one of this chapter; and
(2) The worker has probable cause to believe that the child or children will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

Further, West Virginia Code § 49-1-201 defines "[i]mminent danger to the physical well-being of the child," in part, as "an emergency situation in which the welfare or the life of the child is threatened" and further explains that [t]hese conditions may include an emergency situation when there is . . . reasonable cause to believe that the following conditions threaten the health, life, or safety of any child in the home:
. . . .
(I) Any other condition that threatens the health, life or safety of any child in the home."

---

[3]West Virginia Code § 49-1-204 provides: "'Custodian' means a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement."

[4]Petitioner's husband's custodial rights were also terminated. The children's biological parents are both deceased. The permanency plan for the children is adoption in the current placement.

3

The record is clear that the children were in imminent danger and there was probable cause to believe that they would suffer additional abuse and/or neglect if they had been left in petitioner's care. As the court found, at the time the children were removed, petitioner failed to obtain appropriate medical care and education for them and left them in the care of an individual who was subject to an ongoing CPS investigation. Petitioner does not dispute these facts. Instead, she simply alleges that these situations did not pose a threat to the children. This argument, however, lacks a basis in the record and the law. Accordingly, petitioner is entitled to no relief.

Second, petitioner contends that there was insufficient evidence to support her adjudication as an abusing parent. We disagree. The court was presented with ample evidence that petitioner neglected the children's medical needs to a degree that surgery was required for all the children. Further, petitioner admitted to permitting individuals whose own children had been removed from their custody to supervise the children and explained that she did not believe this constituted neglectful conduct. This clearly satisfies the applicable burden of proof to establish that petitioner, at a minimum, neglected the children. *See* W. Va. Code § 49-1-201 (defining "neglected child," in part, as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's . . . custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education"); W. Va. Code § 49-4-601(i) (imposing a clear and convincing burden of proof at adjudication).

Additionally, petitioner acknowledges that this Court will not ordinarily disturb the lower court's determinations regarding the weight and credibility of evidence, but states that it is proper to do so here. However, we have held that "[a] reviewing court *cannot* assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (emphasis added). Moreover, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). The circuit court appropriately exercised its authority to assign weight and credibility to the evidence presented. Therefore, we decline to disturb the circuit court's ruling.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 23, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn