**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.L.-1, J.L.-2, and A.L.**

**No. 23-91** (Berkeley County CC-02-2021-JA-231, CC-02-2021-JA-232, and CC-02-2021-JA-233)

## MEMORANDUM DECISION

Petitioner Father S.L.-J.[1] appeals the Circuit Court of Berkeley County's January 18, 2023, order terminating his parental rights to J.L.-1, J.L.-2, and A.L.[2] He argues that the findings of fact and conclusions of law in the court's dispositional order are clearly erroneous, thus, the termination of his parental rights was error. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2021, the DHS filed a petition alleging that petitioner abused and neglected his children by abusing alcohol in their presence. At the scene of a car accident involving petitioner and the children, petitioner denied being under the influence of alcohol but failed two sobriety tests and was too intoxicated to complete the third sobriety test. Petitioner was arrested for driving under the influence and taken to jail. The children stated that the purpose of the trip was to purchase chocolate milk and more beer. The petition alleged that petitioner's abuse of alcohol impaired his parenting skills and resulted in his neglect of the children.

---

[1]Petitioner appears by counsel Jonathan T. O'Dell. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee A. Niezgoda. Counsel Emily Mowry appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because two of the children share the same initials, we will refer to them as J.L.-1 and J.L.-2.

In December 2021, petitioner tested positive for alcohol during a court-ordered screen. Due to his positive screen, the court ordered petitioner to be placed on a secure continuous remote alcohol monitor ("SCRAM") bracelet that measures alcohol content in the body via sweat on the skin, as petitioner was "still showing indications of an alcohol use issue[]." The court further ordered that petitioner be referred for alcohol abuse treatment.

In January 2022, the court adjudicated petitioner as an abusing parent based upon his own admission that he was involved in the accident that led to the filing of the petition and that he was driving without a license. Additionally, petitioner admitted that he abused alcohol to the detriment of his parenting skills, that his alcohol abuse posed an imminent risk to the children, and as a result, that the children were neglected.

In February 2022, the circuit court granted petitioner a post-adjudicatory improvement period. The terms included, among other things, participating in and adhering to the recommendations of a psychological evaluation, participating in and adhering to the recommendations of an Addiction Severity Index ("ASI") assessment, family counseling, parenting classes, and continued sobriety. Petitioner's first language is Spanish,[3] so the court provided the terms of the improvement period to him in both English and Spanish.

In March 2022, petitioner participated in a psychological evaluation where he denied being drunk at the time of the October 2021 car accident. The report described petitioner's prognosis as "poor" and noted that petitioner continued to downplay his use of alcohol and that "[i]n order for him to be successful with an improvement period and to be able to benefit from recommended services, he needs to be willing to accept responsibility for his actions and drinking." In August 2022, petitioner participated in an ASI assessment during which he reported that he "never got drunk" and "does not have a problem with alcohol." The ASI assessment recommended, among other things, that petitioner abstain from drugs and alcohol, begin working towards a GED, obtain a driver's license, and take responsibility for his actions. The same month, the guardian filed a lengthy report recommending that petitioner's rights be terminated, noting that petitioner was involved in two previous child abuse and neglect proceedings in Virginia related to his alcohol use. By an order entered in August 2022, the court required that petitioner obtain individual counseling and adhere to the recommendations in his ASI assessment.

The court took testimony and evidence over the course of three dispositional hearings, culminating in a final hearing in January 2023. During the dispositional hearings, the court heard testimony from the children's school counselor, the fictive kin caregivers for the children, the children's school principal, petitioner's girlfriend's son, petitioner's girlfriend, petitioner's day report case manager, and petitioner. Several of the witnesses testified to petitioner's inability to properly parent the children and the negative impact his neglectful conduct had on the children. Several witnesses also testified to disclosures from the children, which included their descriptions of the unsuitable conditions in petitioner's home and their ability to identify the type of beer petitioner drank when at the grocery store with their foster family. According to the children, beer made petitioner "mean." The witnesses also addressed disclosures by the children of physical

---

[3]In addition to translating documents to Spanish, petitioner was provided a translator at each hearing.

2

abuse by petitioner and domestic violence incidents in petitioner's home. Overall, several of the witnesses testified to the children's descriptions of a home that lacked a bed for the children, conditions that resulted in lice and scabies so severe that a service provider had to reupholster a van after transporting the children, and petitioner becoming violent toward multiple individuals. Petitioner's day report case manager testified that she thought petitioner was working to resolve his issues. However, the case manager had not reviewed petitioner's psychological evaluation or his ASI evaluation and confirmed that petitioner was not participating in substance abuse counseling. She further testified that petitioner did not participate in any services other than random drug screenings and online Alcoholics Anonymous meetings held in Spanish, though he did not have a sponsor.

Petitioner gave testimony at the second dispositional hearing, denying having a positive alcohol screen in December 2021, blaming the positive result on beer that was cooked into food he ate. Petitioner denied being intoxicated at the time of the car accident that led to the filing of the petition, could not articulate his specific sober date, and claimed that he did not drink in front of his children. Petitioner also claimed that his children cannot identify the type of beer he drank and that they were "confused because [he] may be drinking a Red Bull or something else." Petitioner testified again at the third and final dispositional hearing. He testified that he read and understood the terms of his improvement period. He claimed that he was participating in substance abuse therapy through Alcoholics Anonymous, but then claimed that his day report case manager, who also served as his peer coach, was his "therapist." Shortly after, he could not identify her by name even though he met with her weekly and stated that he calls her "counselor." Lastly, petitioner testified regarding a recent car accident his girlfriend described earlier in the proceedings. Petitioner's girlfriend claimed that she let petitioner borrow her car, he was in an accident, and he later reported to her that he had hit a deer. However, during petitioner's testimony, he denied driving and claimed that a woman, whose name he could not remember, was driving and wrecked the car.

Based upon the evidence, the court found that petitioner was under the influence of alcohol at the time of the car accident that prompted the initial petition, even though petitioner testified otherwise. The court acknowledged that petitioner appeared to have abstained from alcohol while wearing the SCRAM bracelet and participating in random screens, but the court held that petitioner did not address any of the underlying reasons for his alcohol use or his numerous criminal actions involving alcohol. The court explicitly found that petitioner's testimony was "not credible at all." The court detailed the terms of petitioner's improvement period that he did not meet. Petitioner failed to participate in substance abuse treatment, did not provide evidence that he paid any child support, failed to supply the DHS with medical forms for his children, did not communicate honestly with his case worker on a weekly basis, did not seek treatment for his diagnoses in his psychological evaluation, did not participate in adult life skills classes, and did not start course work for his GED or his driver's license. Additionally, the court found that petitioner could not meet the children's emotional needs and did not have stable housing without his girlfriend's assistance. The court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect that led to the filing of the initial petition, there was no less restrictive alternative to the termination of petitioner's parental rights, and that

the best interests of the children required termination of petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner first argues that the court's findings of fact and conclusions of law are clearly erroneous because the dispositional order relied upon "inaccuracies." For example, petitioner contends that the children's school counselor testified that she may have supported a trial period of reunification for petitioner, but he ignores the fact that the school counselor made that statement *after* testifying that she did not think petitioner was an appropriate caregiver for the children. In short, petitioner's argument is based upon his interpretation of only that evidence he believes is favorable and completely disregards the ample evidence that is unfavorable to his position. Further, he asks this Court to assess witness credibility, which we refuse to do. As we have explained, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court even made an explicit finding that it did not find petitioner's testimony to be credible. After our review of the court's order and the appendix record, including the dispositional hearing transcripts, it is clear that petitioner's argument that the court's order is factually incorrect is baseless. Thus, we decline to disturb the court's findings.

Second, petitioner asserts that the circuit court did not make the legally required findings for termination in its dispositional order because it did not specifically cite to one of the scenarios enumerated in West Virginia Code § 49-4-604(d)(1) through (6), which sets forth situations in which there is no reasonable likelihood that conditions of abuse and/or neglect can be substantially corrected. However, the court specifically based termination upon petitioner's untreated addiction to alcohol, which is a basis for a finding that there was no reasonable likelihood conditions can be corrected as set forth in West Virginia Code § 49-4-604(d)(1).[5] In a similar vein, petitioner argues

---

[4]The mother's parental rights were terminated below. The permanency plan for the children is adoption in the current placement.

[5]That code section reads as follows:

(d) As used in this section, "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help. Those conditions exist in the following circumstances, which are not exclusive:

(1) The abusing parent or parents have habitually abused or are addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning

4

that the court did not consider whether the DHS made reasonable efforts to preserve the family as required by law. W. Va. Code § 49-4-604(c)(6)(C)(iii) (requiring the court to examine whether or not the department made reasonable efforts to preserve the family). However, the circuit court's order addressed, in detail, the fact that petitioner was allowed twelve months to work on an improvement period, during which he was provided a litany of services. Therefore, the circuit court clearly addressed the DHS's reasonable efforts below.

Third, petitioner argues that he fulfilled the terms of his improvement period to the best of his ability. However, it is critical to stress that the burden of fulfilling all terms of an improvement period rests with petitioner. *See* W. Va. Code § 49-4-610(4)(A). During the review hearings throughout the proceedings below, petitioner confirmed that he was aware of the requirements of his improvement period and understood his obligations. If petitioner had any doubts or questions about those terms, he failed to address them at even one of the multiple review hearings that were held. Moreover, petitioner argues on appeal that the terms of the improvement period were "unreasonable," but he did not raise concerns when the terms were being drafted. Petitioner also asserts that he complied with services that were offered to him in Spanish, but ignores the fact that the DHS provided him a Spanish-speaking case manager and provided an interpreter during the proceedings. Therefore, any argument that petitioner could not comply with all services because of a language barrier lacks a basis in the record. At disposition, the circuit court considered petitioner's failure to participate in any mental health or addiction services because he failed to set up those appointments or request assistance from the DHS or his counsel. Because the court's findings concerning petitioner's unsuccessful completion of his improvement period are supported by the record, we find no error.

Finally, petitioner argues that the court erroneously terminated his parental rights because he substantially corrected the conditions that led to the filing of the abuse and neglect petition. Petitioner claims that his ability to remain sober for approximately twelve months shows that he is an appropriate caregiver for the children. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Moreover,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner refused to acknowledge his alcoholism, and, as stated in the court's dispositional order, "has not

addressed any of the underlying reasons for his alcohol use and his numerous criminal actions involving alcohol." In fact, petitioner maintained that he was not under the influence at the time of the car accident that led to the filing of the initial petition. It is well-established that when a parent refuses to acknowledge the problem that caused the abuse and neglect, there is no reasonable likelihood that the problem can be solved. Petitioner continually denied and minimized his alcohol abuse and failed to obtain individual counseling or any kind of substance abuse treatment. The evidence supported the court's termination of petitioner's parental rights. Accordingly, we uphold the court's ruling.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 18, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn