**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.S., A.B., and G.K.**

**No. 24-542** (Morgan County CC-33-2023-JA-32, CC-33-2023-JA-33, and CC-33-2023-JA-34)

## MEMORANDUM DECISION

Petitioner Mother S.S.[1] appeals the Circuit Court of Morgan County's August 18, 2024, order terminating her guardianship and custodial rights to C.S. and A.B. and her parental rights to G.K., arguing that the circuit court erred in terminating her rights without granting her an extension of her improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in July 2023 alleging that the petitioner subjected the children to deplorable housing conditions, including "trash and dirt throughout the home," and failed to properly supervise them resulting in the children injuring themselves and one another. At the time the petition was filed, C.S. and G.K. were permitted to continue residing in the petitioner's home. Additionally, the record shows that the petitioner was involved in a prior abuse and neglect proceeding in 2008 that concerned two of the children, although the petitioner successfully completed an improvement period in that matter. That case also involved the conditions in the home. Finally, the record shows that the petitioner received services as a result of an incorrigibility action involving A.B. in 2019.

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Victoria G. Camardi appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

In September 2023, the petitioner admitted to failing to properly supervise the children, and the circuit court adjudicated her of neglecting all three children on this basis. After the petitioner filed a written motion, the circuit court granted her a post-adjudicatory improvement period at a hearing in December 2023. The DHS did not oppose the motion but expressed concern regarding the petitioner's ability to clean and maintain the residence. The terms and conditions of the improvement period included, among other things, that the petitioner participate in parenting and adult life skills services, clean the home, and participate in individual and family therapy.

At a hearing in January 2024, the DHS reported that the petitioner had made no progress on improving the home and was involved in a domestic violence incident with her partner to which law enforcement responded. In April 2024, the DHS filed an amended petition after law enforcement responded to the home in February 2024 and "observed the home to be in deplorable condition." Additionally, G.K. reported to law enforcement personnel that he was being locked in his room at night and later clarified to the DHS that he remained locked in the room for two days. The petitioner's partner reported that he was no longer in a relationship with the petitioner, given that she was "constantly hitting him, threatening to kill him, and shoving him around." C.S. corroborated that "there was a lot of yelling and fighting" occurring in the home. The DHS investigated the home and found that it lacked heat, contained expired food, smelled of sewer due to a hole in the floor where a toilet should have been connected, had exposed electrical wiring, and was generally cluttered and unclean. The DHS alleged that the petitioner abused and neglected the children by engaging in domestic violence and locking the children in their bedrooms, in addition to the original allegations. The DHS also removed C.S. and G.K. from the home at this time.

The petitioner made certain admissions in advance of adjudication, but the court ultimately heard evidence on the allegations at hearings in May and July 2024. Based on the evidence, the court adjudicated the petitioner of abusing and neglecting the children as a result of the deplorable housing conditions, her perpetration of domestic violence in the home, and locking the children in their rooms.

The matter came on for a dispositional hearing in August 2024, during which the petitioner testified to the long history of the home's poor condition. Specifically, the petitioner indicated that she was charged criminally with creating an open dump in her yard in January 2020 and again in October 2021. The petitioner testified to her participation in services and moved for an extension of her post-adjudicatory improvement period. Further, the petitioner confirmed in her testimony that she told a psychological evaluator that she was "involved in CPS due to . . . reach[ing] out to try to get help" for one of the children's behavioral issues. When asked if she still believed if that was what led to the proceedings, the petitioner responded, "Primarily, yes, because I was trying to get . . . help." The petitioner clarified that after she sought help, "then . . . out of the blue we ended up with the abuse and neglect case." The court also heard from several other witnesses, including therapists for both the petitioner and A.B. Given that the home had not improved during the proceedings, including during a DHS visit the month prior to disposition that documented piles of trash in the yard, the DHS recommended termination of the petitioner's parental rights. Based on the evidence, the court found that "there is, historically and presently, a significant impairment to the ability of the [petitioner] to parent her children, including without limitation the unsanitary conditions of the home" and that she could not meet the children's needs. The court found that this established that there was no reasonable likelihood that the petitioner could substantially correct

the conditions of abuse and neglect in the near future and that the children's best interests required the termination of the petitioner's guardianship and custodial rights to C.S. and A.B. and her parental rights to G.K. Further, the court found that it could not extend the petitioner's improvement period because she did not substantially comply. Accordingly, the court terminated the petitioner's guardianship and custodial rights to C.S. and A.B. and her parental rights to G.K.[3] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating her parental rights without extending her post-adjudicatory improvement period. As the circuit court correctly noted, in order to extend an improvement period, the court must first find, among other things, "that the [parent] has substantially complied with the terms of the improvement period." W. Va. Code § 49-4-610(6). Here, the record overwhelmingly demonstrates that the petitioner failed to substantially comply. Critically, the petitioner was required to clean and improve the condition of the home, yet the condition actually deteriorated during the proceedings to the point that the two children who were initially permitted to remain in the home were removed. Further, the petitioner not only failed to fully comply with the improvement period but engaged in additional new abusive and neglectful conduct, such as perpetrating domestic violence in the home and locking the children in their rooms. In the face of this evidence, the petitioner alleges only that the circuit court gave improper weight to testimony from her therapist. According to the petitioner, this testimony established that, "although the [p]etitioner had not completed all the specific terms of her improvement period . . . , it is clear . . . that she had been substantially in compliance." This is simply not the case, as the therapist's testimony had no bearing on the issues set forth above. Further, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). As such, this argument does not entitle the petitioner to relief.

Finally, we conclude that the circuit court did not err in terminating the petitioner's rights to the children. As the petitioner correctly notes, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Further, we have explained that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting *In re R.J.M.*, 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 2). As

---

[3] The parental rights of the fathers of A.B. and G.K. have been terminated, while the father of C.S. is participating in an improvement period and, according to the DHS, has consented to a permanency plan for C.S. of remaining with the maternal grandmother in a legal guardianship. According to the DHS, the permanency plan for A.B. is legal guardianship with the maternal grandmother following treatment for certain behavioral issues, while the permanency plan for G.K. is adoption in the current placement.

3

set forth above, the evidence not only demonstrated that the petitioner was incapable of correcting the conditions at issue, but the conditions deteriorated across the course of the proceedings. Further, the petitioner demonstrated a long history of correcting these conditions for a short period only for them to return. This is more than sufficient to support the court's finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."). Additionally, the court found, upon ample evidence, that termination was in the children's best interests. Circuit courts are permitted to terminate parental rights upon these findings. *See id.* § 604(c)(6).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 18, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 6, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISQUALIFIED:**

Justice Charles S. Trump IV