**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **B.O.-1, B.O.-2, A.O., B.O.-3, and P.O.**

**No. 25-409** (Wayne County CC-50-2024-JA-81, CC-50-2024-JA-82, CC-50-2024-JA-83, CC-50-2024-JA-84, and CC-50-2024-JA-85)


**MEMORANDUM DECISION**


Petitioner Father T.O.[1] appeals the Circuit Court of Wayne County's May 23, 2025, order terminating his parental rights to B.O.-1, B.O.-2, A.O., B.O.-3, and P.O., arguing that the circuit court erred in doing so.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2024, the DHS filed an abuse and neglect petition alleging that the petitioner and his wife, the children's adoptive parents, failed to provide the children with suitable housing, abused controlled substances, and demonstrated a lack of motivation to parent the children. The DHS further alleged that it had received fifteen referrals about the home between September 2021 and September 2024, with the last leading to the filing of the petition. The circuit court held an adjudicatory hearing in November 2024, where the petitioner stipulated to providing the children with unsuitable housing and to using methamphetamine, which affected his ability to parent. The court accepted the petitioner's stipulation and, accordingly, adjudicated the petitioner as an abusing parent and the children as neglected children. The court also ordered the petitioner and his wife to repay monthly adoption subsidies received from the DHS. Following this hearing, the petitioner filed a motion for a post-adjudicatory improvement period.

At a hearing on January 10, 2025, the parties advised the circuit court that they had agreed to a case plan following a multidisciplinary team ("MDT") meeting on December 2, 2024. Under the case plan, the petitioner agreed to drug screen twice weekly, obtain and maintain appropriate housing, participate in parenting and adult life skills classes, participate in supervised visits, obtain and maintain employment, and enter inpatient substance abuse treatment. However, a Child Protective Services ("CPS") worker testified that the petitioner had only been cooperating with

---

[1] The petitioner appears by counsel Juston H. Moore. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel Kimberly E. McGann appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because several of the children share the same initials, we use numbers to differentiate them.

1

supervised visitation and had not reimbursed the DHS as ordered. The petitioner then testified, admitting to not repaying the DHS and indicating that he had last used methamphetamine three weeks prior. The petitioner further stated that he had attempted to enter inpatient treatment but was denied and was told he "could do outpatient." At the hearing's conclusion, the court found that the petitioner was in contempt of the court's prior order and held the petitioner's motion for an improvement period in abeyance. At the following hearing on January 17, 2025, the petitioner presented a check for the ordered funds, and the court purged the petitioner of his contempt. The court also granted the petitioner a ninety-day post-adjudicatory improvement period "on the condition that [he] enter and participate in long term in-patient treatment."

Following a continuance, the circuit court held the final dispositional hearing in May 2025. A CPS worker testified that the petitioner was generally successful in his supervised visits with the children and had partially improved the condition of the home. However, the CPS worker also testified that the petitioner had only participated in roughly half of the agreed upon parenting and adult life skills classes, had not obtained employment, and had not made any arrangements to obtain treatment for his substance abuse. The CPS worker further represented that the petitioner had missed twenty out of the required forty-four drug screens. Of the drug screens the petitioner did take, six were positive for methamphetamine and amphetamines, with the most recent positive screen occurring on March 14, 2025. The petitioner then testified, admitting that he had not started inpatient treatment but was willing to begin. Despite testifying that he was confused about whether inpatient treatment was required of him, the petitioner stated that he was present at the hearing where the court granted his motion for an improvement period contingent on the petitioner beginning inpatient treatment and had received a copy of the resulting order.

Based upon the evidence, the circuit court found that it had granted the post-adjudicatory improvement period to the petitioner contingent on his participation in inpatient substance abuse treatment. While the petitioner made progress in the home's suitability, the court found that the petitioner had only attended roughly half of the required drug screenings and parenting and life skills classes and had never started the required rehabilitation, despite having approximately one additional month on the improvement period due to the continuance. The court stated that it did not believe the petitioner's explanation for not entering his required treatment, considering the numerous MDTs throughout the case and the availability of the January 17, 2025, hearing order. As a result, the court determined that the petitioner had not been compliant with the terms of his case plan and concluded that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and that termination of the petitioner's rights was in the children's best interests. Accordingly, the court terminated the petitioner's parental rights.[3] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in terminating his parental rights because he "compl[ied] with at least some

---

[3] The court also terminated the mother's parental rights. The children's permanency plan is adoption in their current placements.

terms of his case plan."[4] We disagree. Courts may terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." W. Va. Code § 49-4-604(c)(6). There is no such likelihood when the individual has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child," and this Court regularly affirms termination of parental rights upon an abusing parent's failure to participate in his or her improvement period. *Id.* § 604(d)(3); *see In re K.L.*, 247 W. Va. 657, 667, 885 S.E.2d 595, 605 (2022) (explaining that a parent's "failure to participate" in his improvement period is "a statutorily-recognized basis upon which this Court regularly affirms termination of parental rights"). Here, despite being afforded services to address his substance abuse problems under an agreed case plan, the petitioner missed almost half of his required screens and tested positive for methamphetamine and amphetamines multiple times, with the most recent being in the midst of his post-adjudicatory improvement period. Further, the petitioner failed to enter inpatient substance abuse treatment, upon which the court expressly conditioned his improvement period. The circuit court remained unpersuaded by the petitioner's claimed confusion about what was required of him, and we decline to disturb such credibility findings on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Further, the petitioner does not challenge the court's finding that termination of his parental rights was in the children's best interests. As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights. *See* W. Va. Code § 49-4-604(c)(6).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 23, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

---

[4] In further support of his argument, the petitioner asserts that he should have been granted additional time pursuant to either an extension of his post-adjudicatory improvement period or a post-dispositional improvement period. However, the petitioner does not identify where in the record he moved for an extension or a new improvement period, nor does he cite to any relevant authority in support of this argument. Rule 10(c)(7) of the Rules of Appellate Procedure states that a "brief must contain an argument clearly exhibiting the points of fact and law presented, . . . citing the authorities relied on," and "contain appropriate and specific citations to the record, including citations that pinpoint when and how the issues . . . were presented to the lower tribunal." As a result, we decline to address this argument.

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III